[Civ. No. 54.    Fifth Dist.    Jan. 15, 1962.]

TRISS WALLACE, a Minor, etc., Plaintiff and Respondent,
v. RENEE DER-OHANIAN, Defendant and Appellant.

Hays & Hays for Defendant and Appellant.

Morgan, Beauzay & Holmes, Robert Morgan and Burton Wines for Plaintiff and Respondent.

CONLEY, P. J.—This is an action by which the plaintiff, an 11-year-old girl, sued the defendant, Renee Der-Ohanian, also known as Renee K. Arakelian, doing business as Happy Valley Ranch, operator of a camp for children, for injuries and damages sustained by her through sexual abuse by an unknown person when she was a visitor at the camp.

Mrs. Der-Ohanian, born in Armenian Turkey, was brought to New York in 1929 by a missionary and educated at Columbia University; she is a registered nurse; she has children of her own and has had long experience in conducting children's camps and schools. In August 1956, she opened a summer school or camp on her ranch. In the first year 12 children attended; in the following year 42 were present at the camp;

and in 1958 the total attendance was 82. The school was conducted by Mrs. Der-Ohanian, assisted by male and female counselors. The activities consisted principally of art and crafts classes, singing, folk dancing, swimming and instruction in the Armenian language and culture. The school was non-denominational, and the average age of the children who attended was 10 to 12 years.

The plaintiff, Triss Wallace, had attended the school for a time earlier in the year 1960. At the close of the term the defendant held a reunion of past pupils, called by her a "Buddy Day"; she invited her former pupils, including respondent, to return to the camp over Labor Day. This invitation was accompanied by a statement that if the minor so invited should bring another child with her, both of them would be entertained over the week end without charge. While it is questionable whether the fact that compensation was or was not given would make any difference as to the amount of attention required of Mrs. Der-Ohanian, it should be noted that this entertainment of the children was not in any basic sense free, but had a commercial angle; through the invitations and by advertisement over the radio in the nearby city of Fresno the defendant hoped to increase enrollment at the school at a later date.

The plaintiff, accompanied by an adult relative and bringing with her another 11-year-old girl, Nancy Burke, arrived at the camp in the late afternoon, and the girls were left in the care of the appellant. The two little girls were assigned to a room in one of the barracks-like buildings, and no adult or supervisor was placed in the room with them. In fact, there was a decided shortage of proper supervision, and this forms the essential ground for the claim that respondent was negligent. The action is premised upon the lack of proper care for the plaintiff.

The two 11-year-old girls were assigned to sleep all by themselves in a roughly constructed building which had six rooms in a row. The girls were placed in the third room, the last occupied room in the building, and neither an adult nor any other camp counselor was with them.

Room two was occupied by a Mrs. Hennessey, her daughters and her father, Haig Misakian. Room one was assigned to a Mrs. Thompson and her children. Defendant claims that she requested Mrs. Hennessey and Mrs. Thompson to "look after the girls." Mrs. Hennessey, as a witness, did not recall any such statement, and Mrs. Thompson did not testify. Mrs. Hen-

nessey's conduct, from her own testimony, indicates that she never felt any obligation to protect the two girls in their room.

Of the three camp counselors, one was ill, and the other two went to a dance in Fresno and did not return to the camp until the following morning. The only adult camp attendant anywhere in the vicinity of the two girls at night was the defendant herself. She was sleeping in the girls' dormitory, a separate building some 60 feet from where the two minors were. While there were windows in the dormitory facing the end (the number one, or Thompson) room of the barracks, that room had a solid wall where it faced the dormitory, and, of course, there were necessarily two more walls between the end room and the plaintiff's room. The defendant testified she went to bed at about 10:30 p. m. and heard nothing all night long.

During the night an unidentified man came to the unlocked door of the room occupied by the two children, and, threatening the plaintiff with a knife and a statement that he would kill her if she did not keep quiet, he took her to another part of the ranch, raped her, and sexually abused her otherwise. The trial judge remarked in his memorandum opinion, ". . . there were certain discrepancies in the testimony of the various witnesses, and some features of the case are most puzzling, . . ." There are, in fact, many details which are puzzling and which might have led the trial judge to discredit the story of the little girl as being based on fantasy, but from the standpoint of this court, inasmuch as there was substantial evidence supporting all of the findings of the trial court as to negligence, proximate cause and damages, we must accept the fact on appeal that the little girl was, in fact, raped and otherwise subjected to grave sexual abuse.

The principal points raised by appellant are, first, the claim that the defendant was not negligent, and second, that there is no proximate causal connection between the negligence, if any, of the appellant and the injury and damage to respondent. It is an incontrovertible fact that the actual harm done physically to the plaintiff was directly caused by the criminal act of a person unknown; respondent is in no sense responsible for the commission of the crime itself. Her responsibility, if any, is based on her alleged negligence in not acting with due care for the safety of a child left in her custody.

Under the heading of "Childhood; Youth; Immaturity" in

38 American Jurisprudence, Negligence, section 40, pages 685, 686, it is said in part:

"More care must be exercised toward children than toward persons of mature years. Children of tender years and youthful persons generally are entitled to care proportioned to their inability to foresee and avoid the perils that they may encounter, as well as to the superior knowledge of persons who come into contact with them. The duty to avoid doing them an injury increases with their inability to protect themselves, and with their childish indiscretions, instincts and impulses. A child of immature years has capacity to exercise and is required to exercise for his own safety only such care and self-restraint as belong to childhood.

. . . . . . . . . . . . .

"The measure of precaution which must be taken by one having a child in his care, who stands in no relation to the child except that he has undertaken to care for it, is that care which a prudent person would exercise under like circumstances."

Section 449 of the Restatement of Torts, page 1202, provides as follows: "If the realizable likelihood that a third party may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby."

The foregoing excerpt from the Restatement is quoted with approval in the case of *Richardson* v. *Ham,* 44 Cal.2d 772, 776-777 [285 P.2d 269]. In that case the defendant was held liable for injuries caused when a bulldozer was left unlocked at night and young men, stimulated by liquor and curiosity, started it and caused damages by its uncontrolled course from the top of a mesa. In the opinion it is said:

"The extreme danger created by a bulldozer in uncontrolled motion and the foreseeable risk of intermeddling fully justify imposing a duty on the owner to exercise reasonable care to protect third parties from injuries arising from its operation by intermeddlers. (See *Jensen* v. *Minard, ante,* [44 Cal.2d] pp. 325, 327, 328 [282 P.2d 7]; *Warner* v. *Santa Catalina Island Co., ante,* [44 Cal.2d] pp. 310, 317 [282 P.2d 12], and cases cited.)

"In the absence of an effective lock the bulldozer engine could be started by pushing in a lever and stepping on the starter. Moreover, the engine could be started with the bulldozer in gear, and if so started, the bulldozer would commence

to move immediately. Although this risk could be avoided by the use of a simple but effective lock, there is evidence that no such lock was used. Accordingly, there is substantial evidence that defendants did not exercise reasonable care to prevent intermeddlers from setting their bulldozer in motion.

"It is contended, however, that even if defendants were under a duty to protect plaintiffs from injuries from operation of the bulldozer caused by ordinary intermeddlers, they were not under a duty to protect plaintiffs from intermeddlers who deliberately undertook to operate the bulldozer, or, in other words, that the intentional misconduct of the young men constituted a superseding cause of plaintiffs' injuries. (See Rest. Torts, § 448.) It is settled, however, that 'If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest. Torts, § 449; *McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 298-299 [195 P.2d 783]; *Benton* v. *Sloss*, 38 Cal.2d 399, 405 [240 P.2d 575].) The possibility of the intentional, wrongful misconduct that occurred in this case was not so remote as not to constitute 'one of the hazards' that would justify the conclusion that defendants' failure to lock the bulldozer was negligent. Accordingly, defendants' duty to protect plaintiffs from injuries caused by the uncontrolled and unauthorized operation of their bulldozer included a duty to protect plaintiffs from the intentional misconduct of the young men, and such misconduct did not therefore constitute a superseding cause of plaintiffs' harm."

This principle of liability has been upheld in other California cases. (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872]; *McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 298 [195 P.2d 783]; *Eads* v. *Marks*, 39 Cal.2d 807, 812 [249 P.2d 257]; *Osborn* v. *City of Whittier*, 103 Cal. App.2d 609, 615 [230 P.2d 132]; *Roberts* v. *Del Monte Properties Co.*, 111 Cal.App.2d 69 [243 P.2d 914]; *Terrell* v. *Key System*, 69 Cal.App.2d 682 [159 P.2d 704].) The same rule has been enforced in other jurisdictions, for example, in *Hines* v. *Garrett*, 131 Va. 125 [108 S.E. 690]; *Neering* v. *Illinois Central R. R. Co.*, 383 Ill. 366 [50 N.E.2d 497]; and *Whitehead* v. *Stringer*, 106 Wash. 501 [180 P. 486].

*Davis* v. *Erickson*, 53 Cal.2d 860, 863 [3 Cal.Rptr. 567, 350 P.2d 535] states, ". . . the intervening act of a third person

does not relieve the original wrongdoer of liability if the intervening act was a reasonably foreseeable result of the original actor's wrongdoing."

The decision of this case must turn on the question whether or not the risk of sexual molestation in the circumstances was one which the defendant should have foreseen and better guarded against. Appellant points out that the camp was located in a good and law-abiding farming area in the County of Madera and argues that the appellant was not negligent in failing to give closer attention to the children in their sleeping quarters. Contrary to this contention, the respondent argues that the danger of sexual molestation to young girls is an ever present threat which adults having charge of children should take into consideration in guarding their wellbeing.

It is certain that there exists in our civilization the constant possibility that persons suffering from a lack of proper mental balance or normal decency might subject young people to sexual molestation. This fact is illustrated by frequent newspaper accounts of crimes against children, the many litigated criminal cases, accounts of which find their way into the reports, and the concern of the Legislature evidenced by the enactment of many laws for the protection of children. It is also noted in magazine articles and talks before organizations such as the Parent-Teacher Associations throughout the country. The general feeling of the public that this problem does exist in a threatening way leading to the conclusion that people charged with the care of children should guard against it is confirmed in a treatment of the question in "Sexual Behavior in the Human Female" by Kinsey, pages 116 to 122.*

In *Lillie* v. *Thompson,* 332 U.S. 459 [68 S.Ct. 140, 92 L.Ed. 73], the United States Supreme Court held that where a railroad company required a 22-year-old female telegraph operator to work alone between 11:30 p. m. and 7:30 a. m. in a one-room frame building situated in an isolated part of the railroad yards which the defendant had reason to know was frequented by dangerous characters, the employer failed to exercise reasonable care in lighting the building and its sur-

---

*Magazine articles discussing this problem are cited in Kinsey, "Sexual Behavior in the Human Female" in note 16 on page 117, and there are many additional magazine articles dealing with the question, including Krush and Dorner, *Ten-point Protection Against Molestors* (Oct. 1957) vol. 52, no. 2, "The P.T.A. Magazine," p. 7, and Sowers, *Safeguarding Children Against Molestors* (Jan. 1955) vol. 49, no. 5, "The P.T.A. Magazine," p. 10.

roundings and in guarding and patrolling it. The court says:

"Petitioner alleged in effect that respondent was aware of conditions which created a likelihood that a young woman performing the duties required of petitioner would suffer just such an injury as was in fact inflicted upon her. That the foreseeable danger was from intention or criminal misconduct is irrelevant; respondent nonetheless had a duty to make reasonable provision against it. Breach of that duty would be negligence, and we cannot say as a matter of law that petitioner's injury did not result at least in part from such negligence."

In *McLeod* v. *Grant County School Dist. No. 128,* 42 Wn.2d 316 [255 P.2d 360], the Supreme Court of Washington held that a complaint which alleged lack of supervision of school premises and students with the result that a school child was raped in a dark room adjoining the playground stated a cause of action. In the opinion it is said at page 363 [of 255 P.2d]:

"Whether or not an intervening act is criminal in nature is a fact to be considered in determining whether such act was reasonably foreseeable. But intervening criminal acts may be found to be foreseeable, and if so found, actionable negligence may be predicated thereon. (*Whitehead* v. *Stringer,* 106 Wash. 501 [180 P. 486, 5 A.L.R. 358]; Prosser on Torts, § 49, p. 357; Harper, Laws of Torts, § 124, p. 275; 2 Rest., Torts, § 448, p. 1199.) . . . *Hines* v. *Garrett,* 131 Va. 125 [108 S.E. 690], . . . *Pullman Co.* v. *Culbreth* (5 Cir. [1924]) 2 F.2d 540 [42 A.L.R. 164], . . ." (See also *Hill* v. *Pullman Co.* (E. D. Pa. 1191) 188 F. 497.)

The record in the instant case shows that a person who had served a term in state's prison lived in the vicinity and had worked at times on the ranch; his conviction had been for issuing fictitious checks, and appellant argues that this type of crime could not be supposed to lead to the molestation of little girls; however, prison association is not a good school for the establishment of moral principles. Furthermore, it appears that the grape-picking season was commencing and that crops in the vicinity were picked by miscellaneous crews brought together by labor contractors in neighboring cities.

The trial judge's view of this issue set forth in his memorandum opinion, attached as an exhibit to respondent's brief, is supported by the record and comports with our view of the facts:

"The defendant had lived in the vicinity a long time. She must have known that the grape picking season was about to

start; and she must have known the type of pickers who pick the grapes under the labor contractor method. She must have known that there was an ex-convict on parole living down the road a mile, and working on her place from time to time. She must have known that the nature and arrangement of the buildings at the camp, which were extensive, and included a large abandoned dehydrator, gave every opportunity for a depraved person or persons to hide and spy on the campers and their activities. She must have known that the very presence of a group of young girls at the school, swimming and engaging in camp activities, posed a problem, under the admitted surrounding circumstances, of sexual molestation of the girls. She knew that Triss and Nancy had no adults with them.''

It seems to the court that the trial judge had ample evidence upon which to base his conclusion that liability existed.

The judgment is affirmed.

Brown, J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 14, 1962.