[Civ. No. 57437. Second Dist., Div. Five. Nov. 17, 1980.]

PAMELA L. et al., Minors, etc., Plaintiffs and Appellants, v. RICHARD FARMER et al., Defendants and Respondents.

[And two other cases.]*

*Christine T. v. Farmer and Marion F. v. Farmer.

COUNSEL

Norman Warren Alschuler and Leonard Paul Zelickman for Plaintiffs and Appellants.

Zajic & Kremser and Paul E. Kremser, Jr., for Defendants and Respondents.

OPINION

ASHBY, J.—This is an action for assault and battery and negligence. Plaintiffs (appellants) are three minor girls who, according to the allegations of the complaint, were sexually molested by defendant Richard

Farmer, Jr., at his home between July 1976 and May 1977.[1] Defendant Elsie Farmer (respondent) is Richard's wife. Richard answered the complaint, but Elsie demurred to it. Plaintiffs appeal from a judgment of dismissal as to Elsie, following the sustaining of her demurrer to the second amended complaint. (Code Civ. Proc., §§ 581, subd. 3, 581d.)

The pertinent allegations against respondent in the second amended complaint are as follows:

### "III

"That prior to defendant RICHARD FARMER'S having sexual relations or other sexual acts with plaintiffs, PAMELA L., age 12, CHRISTINE T., age 13 and MARION F., age 11, at the home of defendants, RICHARD FARMER and ELSIE JOANNE FARMER, . . . defendant ELSIE JOANNE FARMER knew: That defendant RICHARD FARMER had a record as a sexual offender and had molested women and children in the past, and knew that said children above named were being invited to swim in defendants' swimming pool by defendant RICHARD FARMER while defendant ELSIE JOANNE FARMER was at work and when defendant RICHARD FARMER would be alone with said children on said premises, and knew that defendant RICHARD FARMER intended to commit sexual acts with said children on said premises if not prevented therefrom and knew that serious danger of sexual misconduct by her husband, defendant RICHARD FARMER on said children would occur unless said defendant ELSIE JOANNE FARMER warned said plaintiff children and their parents of said defendant RICHARD FARMER'S intentions and nature, notified the police or took whatever steps were reasonably necessary under the circumstances to protect said children from her husband's sexual misconducts.

### "IV

"That although defendant ELSIE JOANNE FARMER knew that which is set forth in Paragraph [] III said defendant ELSIE JOANNE FARMER negligently, carelessly, recklessly, wantonly and unlawfully failed to protect said minor children plaintiffs, PAMELA L., CHRISTINE T. and MARION F. against her husband defendant RICHARD FARMER'S sexual conduct toward them, failed to warn or apprise said minor plaintiffs or their parents of their danger from defendant RICHARD FARMER, failed to no-

---

[1]In view of the nature of this case, we have eliminated last names in the title to avoid unnecessarily exposing the identity of the child victims. (See *In re Richard M.* (1975) 14 Cal.3d 783 [122 Cal.Rptr. 531, 537 P.2d 363]; *Linda R.S.* v. *Richard D.* (1973) 410 U.S. 614 [35 L.Ed.2d 536, 93 S.Ct. 1146]; *In re M.G.S.* (1968) 267 Cal.App.2d 329, 340 [72 Cal.Rptr. 808].)

tify the police, permitted said children on her premises while she was absent and when only defendant RICHARD FARMER was present and failed to take any steps reasonably necessary under the circumstances to prevent harm to said plaintiff children.

"V

"Further said defendant ELSIE JOANNE FARMER negligently, carelessly, recklessly and wantonly encouraged the parents of plaintiffs PAMELA L., CHRISTINE T. and MARION F. to permit these children to go onto her premises by telling said parents it was perfectly safe to permit their girls to go to her premises to swim when she wasn't there because 'Dick,' her husband would be there and the children would be perfectly safe and negligently, carelessly, recklessly and wantonly encouraged and invited these children to play in her swimming pool at her home when she knew that said children would be alone with her husband, defendant RICHARD FARMER and negligently prepared food, ice cream and drink to entice said children to her premises when she knew that said children would be alon[e] with her husband, defendant RICHARD FARMER."

Respondent cites the principle that generally a person has no duty to control the conduct of a third person, nor to warn those endangered by such conduct, in the absence of a "special relationship" either to the third person or to the victim. (Rest. 2d Torts, § 315; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 46-47 [136 Cal.Rptr. 854, 560 P.2d 743]; *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144, 155 [145 Cal.Rptr. 534, 577 P.2d 669].) However, this rule is based on the concept that a person should not be liable for "nonfeasance" in failing to act as a "good Samaritan." It has no application where the defendant, through his or her own action (misfeasance) has made the plaintiff's position worse and has created a foreseeable risk of harm from the third person. In such cases the question of duty is governed by the standards of ordinary care. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 49 [123 Cal.Rptr. 468, 539 P.2d 36]; see also *Tarasoff* v. *Regents of University of California, supra*, 17 Cal.3d at p. 435, fn. 5.)

This latter principle is embodied in Restatement Second of Torts section 302B which provides: "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk

of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." (See *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 804 [142 Cal.Rptr. 487].)

Here respondent did not merely fail to prevent harm to plaintiffs from Richard. Respondent by her own acts increased the risk of such harm occurring. According to the allegations in paragraph V, respondent "encouraged and invited" the children to play in her swimming pool, prepared refreshments to "entice" the children, and "encouraged the parents...to permit" the children to come to her premises by telling them it would be perfectly safe for the girls to swim when respondent was not there, because her husband would be there. This was done, it is alleged, with knowledge that Richard had molested women and children in the past and that it was reasonably foreseeable he would do so again if left alone with the children on the premises. By encouraging and inviting the children to be alone with Richard under circumstances where he would have peculiar opportunity and temptation to commit such misconduct, respondent could be held to have unreasonably exposed the children to harm.[2]

In *Wallace* v. *Der-Ohanian* (1962) 199 Cal.App.2d 141 [18 Cal.Rptr. 892], the defendant operator of a summer camp for girls gave a weekend party at the camp. The plaintiff was one of a number of girls, around age 11, who were assigned to a dormitory without any adult supervision. During the night an unknown intruder entered plaintiff's room and sexually abused her.

The court upheld a judgment against the defendant, finding both a duty to the child and the foreseeability of harm in the particular circumstances of the case. ■ With regard to duty, the court noted, "'The measure of precaution which must be taken by one having a child

---

[2] In comment e, paragraph D, illustration 10, to Restatement Second of Torts section 302B, it is stated that the actor is required to take precautions "[w]here the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct. [¶] . . . A, a young girl, is a passenger on B Railroad. She falls asleep and is carried beyond her station. The conductor puts her off of the train in an unprotected spot, immediately adjacent to a 'jungle' in which hoboes are camped. It is notorious that many of these hoboes are criminals, or men of rough and violent character. A is raped by one of the hoboes. B Railroad may be found to be negligent toward A." (See also Rest. 2d Torts, § 449.)

in his care, who stands in no relation to the child except that he has undertaken to care for it, is that care which a prudent person would exercise under like circumstances.'" (*Id.*, at p. 144.)

Analyzing respondent's liability in light of relevant policy considerations rather than arbitrary classifications of "invitee" or "licensee,"[3] we conclude respondent can be held liable in this case. Assuming the allegations of Richard's past conduct and respondent's knowledge thereof were adequately proved, the most important factor, foreseeability of harm, is great. The harm occurred at respondent's home, committed by a person having a close relation to respondent. According to the allegations, plaintiffs were expressly invited by respondent. The burden on respondent to avoid the harm was slight; she could have suggested simply that she did not want plaintiffs to come over to swim while respondent was not home. Although Richard's primary responsibility for the harm is obvious, nevertheless there is a fairly close connection between respondent's invitation and the ultimate harm. There is moral culpability for respondent's conduct which increased the risk of harm. The victims were children entitled to more stringent precautions than necessary for an adult.

Finally, even if this case were analyzed in terms of nonliability in the absence of a "special relationship," the necessary special relationship between respondent and plaintiffs in this case can be inferred. The trend has been to expand the list of special relationships which justify imposing liability. (*Tarasoff* v. *Regents of University of California, supra*, 17 Cal.3d 425, 435, fn. 5; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773-780 [139 Cal.Rptr. 82].) Said one court, "The law appears to be heading toward a recognition of the duty to aid or protect in any relation of dependence or of mutual dependence." (*Mann* v. *State of California, supra.*) In this case plaintiffs were dependent upon respondent because plaintiffs are children. Being of tender years they were particularly vulnerable to this sort of misconduct and not fully able to protect themselves against it. (*Wallace* v. *Der-Ohanian, supra*, 199 Cal.App.2d 141, 144.) In inviting the children to her home, respondent assumed that special relationship. Respondent recognized that

---

[3]*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Carlson* v. *Ross* (1969) 271 Cal.App.2d 29, 31-32 [76 Cal.Rptr. 209]. Compare *O'Hara* v. *Western Seven Trees Corp., supra*, 75 Cal.App.3d 798, 804, with *Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 545 [134 Cal.Rptr. 29].

special duty and relationship when she assured plaintiffs' parents it would be safe for them to play at her house.

The judgment is reversed.

Kaus, P. J., and Hastings, J., concurred.