**Jennifer MARTIN and Elizabeth Martin, By and Through their Guardian ad Litem, Vikki MARTIN and Vikki Martin, individually, Plaintiffs,**

*v.*

**UNITED STATES of America, et al., Defendants.**

**No. C-89-20579 JW.**

United States District Court, N.D. California.

Dec. 3, 1991.

Don E. Bailey, Valerie Ansel Karpman, Bailey & Karpman, San Francisco, Cal., for plaintiffs.

Robert Butler, Asst. U.S. Atty., San Francisco, Cal., for defendants.

ORDER RE MOTION FOR SUMMARY JUDGMENT; APPLICABILITY OF CALIFORNIA CIVIL CODE §§ 1431.1–1431.5 (Proposition 51)

WARE, District Judge.

## I. INTRODUCTION

This lawsuit raises two important issues of California law.  First, under *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) and its progeny, can family members recover against a day care center for emotional distress suffered after learning that a six-year old family member was abducted and raped while under the cen-

ter's negligent supervision. Recent decisions of the California courts have refined and limited the standards for recovery for negligent infliction of emotional distress. This Court is asked to apply these standards to adjudicate claims in this case.

Second, the Court is asked to decide if Proposition 51, the so-called "Deep Pocket" initiative passed by the California electorate in 1986, requires a proportionately low assessment of damages against the government by requiring a comparison of its negligent conduct with the intentional conduct of the kidnapper and rapist. This appears to be a matter of first impression.

## II. BACKGROUND

This lawsuit arises from an incident involving Jennifer Martin, a six-year old girl, who was abducted and raped on December 6, 1986 while on an outing with the Presidio of Monterey Youth Center ("Center"). Jennifer and eight other children were under the supervision of Sal Maene, Director of the Center. Maene took the children on an authorized field trip to Monterey Veterans Memorial Park. While at the park, due to Maene's negligence, Jennifer became separated from the group. She was abducted and raped by Gary Johnson. (See Exhibit "C" to Declaration of Robert M. Butler in Support of Defendant's Motion for Summary Judgment). Jennifer suffered serious emotional distress as a result of the incident.

Jennifer seeks damages from the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. Sections 1346(b), 2671 *et seq.*, on the ground that the supervisor of the Youth Center was negligent in his supervision of Jennifer and the other children.

Jennifer's mother, Vikki Martin, has also filed a claim for negligent infliction of emotional distress which she suffered upon learning that her daughter had been kidnapped and raped. Finally, the victim's sister, Elizabeth Martin, who was also at the day care center, but who did not witness the abduction or rape, has also filed a claim for negligent infliction of emotional distress.

The government has moved for summary judgment with respect to the claims of the mother and sister. The government argues that even if the supervisor of the Center was negligent, Jennifer's mother and sister were neither "bystanders" nor "direct victims" and thus may not recover for negligent infliction of emotional distress.

In addition, the government contends that the California Fair Responsibility Act (Proposition 51) applies to any non-economic damages which may be awarded in this case. Proposition 51 provides that when liability of joint tortfeasors is based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. The government states that Proposition 51 requires the court to award a relatively small amount of damages against it, because the damages caused by its negligent supervision are relatively minor in comparison to the damages caused by the serious criminal acts committed by the person who actually kidnapped and raped the child.

For the reasons discussed more fully below, this Court grants the government's motion for summary adjudication barring the claims of Vikki and Elizabeth Martin. However, the Court finds that Proposition 51 is inapplicable to this case because the principles of comparative negligence do not apply to cases such as this where one tortfeasor is negligent and a co-tortfeasor is guilty of intentional misconduct.

## III. LEGAL STANDARD

### A. *Summary Judgment*

Summary judgment should be granted where there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive law identifies which facts are material. A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202

(1986). The evidence, and any inferences based on underlying facts, must be viewed in a light most favorable to the plaintiffs as opposing parties. *Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1358 n. 1 (9th Cir.1985). *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

### B. *Applicable Law*

Under the Federal Tort Claims Act, the United States may be held liable for negligence of its agents or its employees. Liability is to be determined "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Tort actions under the FTCA are to be governed by the "law of the place." 28 U.S.C. § 1346(b); *Kangley v. United States,* 788 F.2d 533 (9th Cir. 1986). Because the acts which are the subject of this action occurred in California, California law applies.

### IV. DISCUSSION

### A. *Negligent Infliction of Emotional Distress*

■ A labyrinthine body of law has developed in California around actions for negligent infliction of emotional distress. Under California law, negligent infliction of emotional distress falls within the ambit of negligence actions. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 257 Cal.Rptr. 98, 770 P.2d 278, 281 (1989) (quoting 6 Witkin, *Summary of California Law* Torts § 838 at 195 (9th ed.1988)). Thus the criteria for establishing a cause of action for negligence must be met, i.e. duty, breach, causation, damage. It is a question of law as to whether a defendant owes a duty of care. Historically, foreseeability of risk has been the hallmark of recovery for negligent infliction of emotional distress. *Dillon,* 69 Cal. Rptr. at 80, 441 P.2d at 920 (allowing recovery and providing that the foreseeability "factor will be of prime concern in every case"). The California Supreme Court has stated that in determining whether a defendant owes a duty of care, policy considerations must be weighed and, in fact, policy considerations have been a chief consideration in the court's decisions. *Marlene F.,* 257 Cal.Rptr. at 101, 770 P.2d at 281 (quoting *Slaughter v. Legal Process & Courier Service,* 162 Cal.App.3d 1236, 209 Cal.Rptr. 189, 196 (1984); *Dillon,* 69 Cal.Rptr. at 76, 441 P.2d at 916; *Thing v. La Chusa,* 48 Cal.3d 644, 257 Cal.Rptr. 865, 878–80, 771 P.2d 814, 827–29 (1989) (discussing policy rationale for limiting recovery under negligent infliction of emotional distress); *see also id.* 257 Cal.Rptr. at 893, 771 P.2d at 842 (Broussard, J., dissenting) (noting majority's "undue and what appears to be almost total reliance on policy rationale").

■ Although criticized and circumscribed by relatively recent California Supreme Court decisions, California recognizes two theories of recovery for negligent infliction of emotional distress: "bystander/percipient witness" and "direct victim." *See Thing,* 257 Cal.Rptr. 865, 771 P.2d 814 (1989); *Marlene F.,* 257 Cal.Rptr. 98, 770 P.2d 278 (1989); *see also Schwartz v. Regents of University of California,* 226 Cal.App.3d 149, 276 Cal.Rptr. 470 (1990) (reviewing limitation placed on bystander recovery for negligent infliction of emotional distress by *Thing* opinion, noting *Thing's* criticism of direct victim recovery but concluding that direct victim theory is still viable after *Thing* and *Marlene F.* decisions).

Because of the amorphous if not contradictory character of this area of negligence and in an attempt to achieve a level of lucidity in the Court's decision, this order first briefly traces the history of the development of bystander and direct victim recovery. It then assesses Vikki Martin's and Elizabeth Martin's claims for recovery separately.

### 1. Bystander Theory of Recovery

Beginning with the California Supreme Court's 1968 ruling in *Dillon v. Legg,* California courts have allowed certain "bystander or percipient witness" plaintiffs to

recover for emotional injury caused after witnessing the infliction of injury on a third party (victim).[1] The *Dillon* court articulated three elements for courts to consider when assessing plaintiffs' claims: (1) was plaintiff located near the scene of the accident; (2) was the shock a result of sensory and contemporaneous observance of the accident; and (3) were plaintiff and the victim closely related. *Dillon*, 69 Cal.Rptr. at 80–81, 441 P.2d at 920–21; *see also Krouse v. Graham*, 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022 (1977).[2] The *Dillon* court factors were offered to aid courts in their determination of foreseeability of risk from which a duty of care would flow. The court acknowledged that the assessment of whether the duty of care would allow a particular plaintiff to recover "must necessarily be adjudicated only upon a case-by-case basis," and offered the factors as guidelines. *Dillon*, 69 Cal.Rptr. at 80, 441 P.2d at 920.

■ In *Ochoa v. Superior Court*, 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1 (1985), the court further explained the requirement under the bystander theory that a plaintiff witness an "injury-producing event." The *Ochoa* plaintiff was permitted to recover under the percipient witness theory after observing the lack of medical attention and deteriorating condition of her hospitalized son over the course of days. Thus, there need not be a sudden occurrence or incident under the bystander theory. However, the court required that the plaintiff be present at the conduct giving rise to the victim's injury. *Thing*, 257 Cal. Rptr. at 875, 771 P.2d at 824 ("*[O]choa* held only that recovery would be permitted if the plaintiff observes both the defendant's conduct and the resultant injury, and is aware at that time that the conduct is causing the injury.").

The *Thing v. La Chusa* case re-visited the *Dillon* "bystander" paradigm. In holding that a mother could *not* recover for emotional suffering caused by coming to the scene of accident and viewing her son only minutes after he was struck by a car, the court stated that the guidelines of *Dillon* were threshold requirements for recovery. The modified criteria under bystander theory were stated as:

(1) plaintiff is closely related to the injury victim;

(2) plaintiff is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and

(3) as a result, plaintiff suffers emotional distress, beyond that which would be anticipated in a disinterested witness. *Thing*, 257 Cal.Rptr. at 880–81, 771 P.2d at 829–30.

The *Thing* majority was critical of a perceived expansion of liability and of inconsistencies in post-*Dillon* rulings on recovery. *Id.* 257 Cal.Rptr. at 876–80, 771 P.2d at 825–29. The *Thing* court viewed the imposition of "requirements" as a means of maintaining more uniform parameters on recovery for emotional distress. *Id.* 257 Cal.Rptr. at 877, 771 P.2d at 826 ("foreseeability of the injury alone is not a useful "guideline" or a meaningful restriction on the scope of the NIED action."). Thus, in order for the claims of plaintiff Vikki or Elizabeth Martin to survive the government's summary judgment motion on a "bystander" theory, this Court must find that their respective claims satisfy the three elements articulated in *Thing*.

### 2. Direct Victim Theory

■ Under the direct victim theory, the defendant's negligent conduct must be inherently directed at the plaintiff. In 1980, the California Supreme Court allowed re-

---

**1.** *Dillon* overruled the "zone of danger" theory of recovery which had been the standard articulated in *Amaya v. Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 29 Cal.Rptr. 33 (1963).

**2.** The *Krouse* case modified the second requirement of actually viewing the injury-producing event: where the husband did not see a car hit his wife but knew her position outside the automobile in which he was seated just prior to accident. The husband was found to have met the *Dillon* factor of "sensory and contemporaneous perception" as a percipient witness to the injury-producing event and could thus recover under the bystander theory.

covery for negligent infliction of emotional distress for a plaintiff, who was not a bystander or percipient witness, but who was himself a "direct victim" of the negligent act which injured the victim. *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980). The court held in *Molien* that a plaintiff husband could recover for negligent infliction of emotional distress suffered when a doctor misdiagnosed plaintiff's wife as having syphilis. The California Supreme Court held that the husband was a "direct victim" of the doctor's negligence because the doctor instructed the wife to inform her husband and advise him to be tested for the disease.[3]

Rulings subsequent to *Molien* have provided layers and shadings to the direct victim paradigm. In *Marlene F.*, the California Supreme Court allowed recovery under the direct victim approach to mothers whose sons were sexually molested by a therapist. The court reiterated that for recovery under the direct victim theory, there must be a duty of care owed to plaintiff, directly. As the court stated, the duty to plaintiff may be one that "is assumed by the defendants or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Marlene F.*, 257 Cal.Rptr. at 102, 770 P.2d at 282. The court held that the defendant had a direct duty to the mothers because although the sons were the initial patients, both the mothers and their sons were undergoing therapy. The court held that the therapist owed a duty of care to the mothers as well as to the boys.

Although the California Supreme Court's more recent decision in *Thing* criticized the distinction between bystander and direct victim approaches, the court granted recovery under the direct victim theory in *Marlene F.* that same month. Further, the opinion in *Marlene F.* acknowledged that the bystander requirements have no application under the direct victim theory of recovery, thus the court implicitly recognized the continued viability of both theories. *See Marlene F.*, 257 Cal.Rptr. at 101 n. 4, 770 P.2d at 281 n. 4; *see also Schwartz*, 276 Cal.Rptr. at 477 (concluding that "direct victim" still viable theory of recovery after *Marlene F.* decision).

The rules established by these cases are influenced by the fact that most of the cases arise in medical care situations. In *Schwartz*, an appellate court concluded that when the negligence is alleged to occur during medical *diagnosis*, those individuals whose interests are foreseeable and directly affected by *communication* of a negligent misdiagnosis are given standing to sue as direct victims of the negligence. On the other hand, when the negligence is alleged to have occurred during medical *treatment*, only those individuals receiving treatment are given standing to sue, because the "end and aim" of treatment is directed solely to the patient, i.e., to enhance the health of the patient.[4] In treatment cases, parents and spouses, although emotionally concerned, are not granted standing to sue as direct victims. The appellate court reasoned that, with respect to treatment, the relative's interest is not united with that of the patient. Although the relative has an interest in the patient's health, he also has an interest in his own peace of mind. As the relative's state of mind is secondary and incidental, the caregiver's conduct is not intended to affect the relative's interest to any significant extent.[5]

3. The risk to the husband was determined to be reasonably foreseeable and the doctor's conduct was deemed directed towards the husband as well as towards the patient. *See also Thing*, 257 Cal.Rptr. at 873, 771 P.2d at 822 (reviewing post-*Dillon* expansion of tort recovery and noting *Molien* holding distinguished direct victim from bystander theory).

4. Standing to sue for emotional distress was granted to relatives in a recent treatment case. The mothers in *Marlene F.* were allowed to sue as direct victims for emotional distress suffered when they learned that a psychotherapist had molested their sons during treatment. Standing was allowed because the mothers were themselves patients of the psychotherapist.

5. "Thus, we hold that when the negligence is alleged to have occurred during the medical treatment of the child, the defendant's conduct is directed solely at the child, the intended third party beneficiary of the contract [citation omitted], and not at the parent who enters into the

It is easily foreseeable that a negligent act which results in serious injury to a child will cause parents to suffer emotional distress. However, to hold that a parent is a direct victim of a tortfeasor because it is foreseeable that distress will result from learning of the injury to a child or because the parent entered into the contract with the tortfeasor is regarded as a nearly limitless extension of liability. California does not permit one family member to sue for injury to another when the negligent conduct is directed solely at the patient under treatment. *See Schwartz,* 276 Cal.Rptr. at 480–82 and cases cited therein.

### 3. Special Relationship as Basis for Standing as Direct Victim

In *Phyllis P. v. Superior Court,* 183 Cal.App.3d 1193, 228 Cal.Rptr. 776 (1986), the court allowed a mother to maintain an action for negligent infliction of emotional distress against a school district when she learned that her young daughter had been raped by a fellow student.[6]

In *Phyllis P.,* a daughter was sexually molested a number of times over a 4–month period by a 13–year old male student. The daughter had reported the incidents to school officials, who decided not to notify the mother about them. Relying on *Johnson v. County of Los Angeles,* 143 Cal.App.3d 298, 191 Cal.Rptr. 704 (1983),[7] the appellate court held that by virtue of defendant's knowledge of earlier attacks and its standing *in loco parentis,* the district stood in a "special relationship" with the mother. The mother was held to be a direct victim of the school district's negligence, i.e., the district's negligent conduct in concealing the molestations breached a duty to the mother to inform her of the earlier attacks.

Thus, in order for the claims of plaintiff Vikki or Elizabeth Martin to survive the government's summary judgment motion under the direct victim theory, this Court must find that the defendant's negligent conduct was directed at them or breached a duty owed directly to them.

### 4. Vikki Martin's Claim

■ Plaintiff Vikki Martin asserts her claim under the direct victim theory. She argues that the day care supervisor, Sal Maene and his employer the United States, owed a special duty to her as a parent to supervise her daughters and prevent harm to them from a third party. She asserts that a duty of care was owed to her as a parent who relied on the day care provider to stand *in loco parentis.* She alleges that she suffered severe emotional injury when the day care center negligently supervised her daughter, which was a breach of that duty of care.

California courts have found that day care nurseries have a duty to supervise and protect children. *Fowler v. Seaton,* 61 Cal.2d 681, 39 Cal.Rptr. 881, 394 P.2d 697 (1964). Further, the level of care and supervision must be "commensurate with the age of the children and with their activities." *Id.* 39 Cal.Rptr. at 885, 394 P.2d at 701. The United States Court of Appeals of the Ninth Circuit recognized the critical role day care plays in the lives of working parents.[8] Day care centers not only direct-

---

contract solely as a surrogate for the minor child who otherwise could disaffirm it [citations]. In sum, the simple existence of a contract between a parent and a medical caregiver to provide medical treatment for a child is not in itself sufficient to impose on the caregiver a duty of care owed to the parent." *Schwartz,* 276 Cal.Rptr. at 482.

**6.** The appellate court issued a peremptory writ of mandate directing the trial court to vacate its order sustaining without leave to amend the demurrer of defendants to petitioners causes of action for negligent and intentional infliction of emotional distress. The court directed the trial

court to grant leave to petitioner to allege the existence of a special relationship.

**7.** In this case, a wife and daughter were given standing to sue the County for wrongful death when the sheriff released the decedent from jail, knowing that he was suicidal. It is questionable whether the standards allowing family members to sue for wrongful death are applicable to suits for negligent infliction of emotional distress. See *Budavari v. Barry,* 176 Cal.App.3d 849, 222 Cal.Rptr. 446, 449 (1986).

**8.** *Rush v. Obledo,* 756 F.2d 713 (9th Cir.1985) (upholding the validity of state regulation authorizing warrantless inspections of family day-

ly benefit children in their care, they provide a service for the benefit of parents who place their children in such facilities.

Courts have also found that there is a duty to protect children from the harmful conduct of a third party and particularly from sexual assault. In *Wallace v. Der-Ohanian*, 199 Cal.App.2d 141, 18 Cal.Rptr. 892 (1962), the court found that protection from sexual molestation was a duty owed by a camp operator to an 11-year old girl. *Id.* 18 Cal.Rptr. at 894. The duty to supervise and protect children may also arise from a less formal relationship. In *Pamela L. v. Farmer*, 112 Cal.App.3d 206, 169 Cal.Rptr. 282 (1980), a wife who knew of husband's past incidents of sexual molestation of children breached a duty to neighbor's children by inviting them over to swim knowing they would be alone with the husband (who did molest the children).

In the instant case, Jennifer and Elizabeth Martin were in day care operated by the Presidio of Monterey. As a parent, Vikki Martin relied on the day care center to responsibly supervise her children and protect them from harmful conduct of a third party. As the *Wallace* court observed almost 30 years ago, sexual molestation and assault are foreseeable crimes from which children should be protected.

However enticing it may be to permit a mother in Vikki's circumstances to sue, particularly given the serious injury suffered by her daughter, the court must decline the invitation to extend the present reach of California laws governing liability for negligent infliction of emotional distress. The California Supreme Court's most recent and concrete pronouncements on recovery for negligent infliction of emotional distress in *Thing* and *Marlene F.* indicate a growing concern to delineate firm boundaries around the class of plaintiffs who may recover under this aspect of negligence. The *Thing* decision particularly evidences the court's desire for predictability in this area of law and its willing-

ness to impose "arbitrary bright lines" in an effort to attain this goal. *Thing*, 257 Cal.Rptr. at 866, 771 P.2d at 815, 827–29. *See also id.* 257 Cal.Rptr. at 892–93, 771 P.2d at 841–42 (Broussard, J., dissenting) (criticizing majority for imposing arbitrary bright lines which will "lead to unjust results"); *Air–Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 186–87 (9th Cir. 1989) (noting California Supreme Court decisions have narrowed the scope of tort liability and that the "desire for predictability was also at the root of the *Thing* decision.").

To grant standing to Vikki would ignore the lines California court's have been attempting to draw to limit these kinds of claims. Many family members rely and depend upon various kinds of day care. This Youth Center is just one of a variety of methods parents use to care for their young in today's society. The child care responsibility assumed by the Youth Center is not very different from that assumed by a neighbor asked to watch a child while a parent runs an errand; or from a noncustodial parent left with the care of a child during visitation; or from a school charged with caring for students like Jennifer. Indeed, if the line is not drawn against this case, there would be no reasonable basis for limiting the analysis to parent-child situations. As observed by one California court, a husband has no less compelling interest in the continued well-being of his wife. Yet, he is not given standing to sue as a direct victim for injuries to his spouse. *See Schwartz*, 276 Cal.Rptr. at 482.

The *Phyllis P.* case has many similarities to the case before this Court. It involves a school district, with obvious parallels to a day care center, and it arises outside of a medical context. However, the Court finds that it is not controlling. Although the *Phyllis P.* court held that the mother was a direct victim of the school district's negligence, that finding was based upon breach of a duty to notify the parent of circumstances known only to the care giver.

care homes.). The *Rush* decision acknowledged and relied upon the California legislature's rationale that such regulation was necessary for protecting health and safety of children and that

"good quality child day-care services are an essential service for working parents." *Id.* at 716 (quoting Cal. H & S §§ 1596.72(e), 1596.73(e)).

Such circumstances are not present in the instant case.

Defendant's negligent supervision of Jennifer Martin was conduct directed at Jennifer. Clearly, Jennifer should be able to recover for all damages proximately caused. However, Vikki Martin was not a direct victim of that negligence and summary judgment should be entered against her claim.

### 5. Elizabeth Martin's Claim

■ Elizabeth Martin's claims are based on both the direct victim theory and the bystander theory. The Court finds that the duty to supervise and protect Jennifer Martin does not give rise to a special relationship between the defendant and her sibling, Elizabeth Martin. Thus, Elizabeth Martin does not have a cause of action under the direct victim theory of recovery.

Under the bystander theory of recovery, Elizabeth's claims appear to meet the first and third elements articulated by *Thing:* she is closely related to the victim, Jennifer, and she provided sufficient facts as to her emotional distress to survive a summary judgment motion. However, her assertions regarding the second element are problematic. Under this element, she must show that she was present at the injury-producing event and was aware that the defendant's conduct was causing injury to the victim. She need not be aware that defendant's conduct was tortious. *Thing,* 257 Cal.Rptr. at 876, 771 P.2d at 825.

Elizabeth Martin argues that she meets the *Thing* requirement of witnessing the injury-producing event since she was present during the negligent conduct of Sal Maene. She was with the other children when the group noticed that Jennifer was missing. Elizabeth participated in the children's search for Jennifer. The depositions also indicate Elizabeth may have seen Jennifer outside the RV in which she was abducted. She did see Jennifer at the police station, where Jennifer was taken by police after she was found at another location. Jennifer was in a state of distress and disarray and police would not allow Jennifer to accompany Elizabeth and the

other children back to the Youth Center. Elizabeth claims that she perceived there was something wrong with Jennifer, both when she was missing and at the police station. This sense of harm was caused in part by Sal Maene's statements of concern for Jennifer.

Defendant contends that the injury-producing event was the abduction and rape of Jennifer Martin which Elizabeth does not claim to have witnessed. They argue that since she did not witness those events she does not meet the requirements for bystander recovery.

The defendant's arguments and interpretation of the law are persuasive on this point. Although Elizabeth Martin sensed something was wrong with her sister, she did not have the requisite contemporaneous and sensory perception of the injury being inflicted on her sister. She did not know with certainty that her sister was being abducted and assaulted because of Sal Maene's negligent conduct nor did she know the effects of the negligent conduct at the time it was occurring, as mandated by *Ochoa* and *Thing.* For these reasons Elizabeth does not meet the requirements for bystander recovery.

The Court grants defendant's summary judgment motion on the claim of Elizabeth Martin.

### B. *Application of California Civil Code §§ 1431.1 et seq. (Proposition 51)*

■ Defendant asserts in its trial brief that the Court should apply the Fair Responsibility Act, California Civil Code §§ 1431.1–1431.5 (Proposition 51) to any adjudged non-economic damages.

Proposition 51 was enacted by initiative in 1986 to counter perceived inequities with the "deep pocket rule" whereby a wealthy defendant who had contributed relatively little to plaintiff's injury could be held liable for an entire judgment under principles of joint and several liability. Cal.Civ.Code § 1431.1 (West Supp.1991). In relevant part, § 1431.2 states:

In any action for personal injury, property damage, or wrongful death, based

upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount.

The provisions of Proposition 51 thus abrogated the rule of joint and several liability for non-economic damages[9] and mandates that tortfeasors will be liable in relation to their percentage of fault.

Proposition 51 has not yet been applied to situations involving multiple tortfeasors, some of whose conduct was negligent and others whose conduct was intentional and criminal. The Court finds that the instant case is *not* one where Proposition 51 applies because this is not a case where the principles of comparative fault apply.

California courts abolished the doctrine of contributory negligence as a bar to recovery in *Li v. Yellow Cab. Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975). *Li* instituted the principle of comparative fault for apportionment of damages providing that:

A comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional. *Id.* 119 Cal.Rptr. at 873, 532 P.2d at 1241.

Thus under *Li*, intentional conduct is excluded from the principles of comparative fault in California.

Apportionment of damages has been extended to cases of multiple tortfeasors where one defendant was strictly liable and another was liable in negligence, *Safeway*

*v. Nest–Kart*, 21 Cal.3d 322, 146 Cal.Rptr. 550, 579 P.2d 441 (1978), and to a case of wilful misconduct by defendant and contributory negligence of plaintiff. *Sorensen v. Allred*, 112 Cal.App.3d 717, 169 Cal. Rptr. 441 (1980). However, principles of comparative fault have not been extended in California to situations where one person who causes an injury is guilty of intentional conduct, and another person who causes the same injury is negligent.

The defendant contends that the trend to apportion damages between strictly liable and negligent tortfeasors implies that apportionment should also extend to cases involving intentional and negligent tortfeasors, such as the instant case. The United States urges this Court to follow a recent New Jersey case which reviewed this issue and did allow apportionment among a negligent plaintiff, a negligent defendant and several defendants whose conduct was found to be intentional. *Blazovic v. Andrich*, 124 N.J. 90, 590 A.2d 222 (1991). However, the *Blazovic* opinion acknowledged that California was a jurisdiction which had declined to extend principles of comparative fault to intentional conduct. *Id.* 590 A.2d at 227–28. Moreover, California courts have shown a reluctance to rely on out-of-state interpretations of comparative fault principles, since in California, the principles are based solely on judicial decisions. *See e.g. Sorenson v. Allred*, 112 Cal.App.3d 717, 169 Cal.Rptr. 441 (1980).

Defendant further alleges that it would be inequitable to hold the United States liable for the full amount of damages because the injury was primarily caused by the intentional and criminal conduct of Gary Johnson.[10] Plaintiffs argue that inequity would result in allowing the defendant to escape complete liability for the injury

---

9. § 1431.2(b)(2) provides a definition of non-economic damages: "For purposes of this section, the term "non-economic" means subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation."

10. Defendant's maintain that the fact that Johnson is not a named defendant in this action is

not dispositive on whether damages should be apportioned. Defendant cites *Gilman v. Beverly Corp.*, 231 Cal.App.3d 121, 283 Cal.Rptr. 17 (1991), which provided that apportionment provisions of Proposition 51 do apply to non-party tortfeasors. However the *Gilman* decision is not final until expiration of time within which the California Supreme Court may order review. See also *Mills v. MMM Carpets*, 91 Daily Journal D.A.R. 14411.

because the defendant had a duty to prevent the criminal act of the third party. The Court recognizes the reasoning which would preclude apportionment between two tortfeasors when the duty of one encompasses the obligation to prevent the specific misconduct of the other. In this case, however, the Court does not need to rely on this causal connection to deny apportionment since there is substantial authority for not applying principles of comparative fault where intentional conduct is involved.

## V. CONCLUSION

In conclusion, the Court finds under the circumstances of this case, neither Vikki Martin nor Elizabeth Martin may maintain a cause of action for negligent infliction of emotional distress under California law. Accordingly, summary adjudication is granted on these claims.

The Court finds California Civil Code §§ 1431.1–1431.5 (Proposition 51) inapplicable to the apportionment of any adjudged non-economic damages.

IT IS SO ORDERED.