922 P.2d 347

Wendy TOUCHETTE, Individually and as Special Administratrix of the Estate of Michael Robert Touchette, deceased, as Special Administratrix of the Estate of Kalah Kim Touchette, deceased minor, and as Special Administratrix of Joshua Michael Touchette, deceased minor, Plaintiffs–Appellants,

v.

Mabel GANAL; Enivel, Inc. dba Young Laundry & Dry Cleaning;[1] Island Insurance Company, Limited,[2] Defendants–Appellees,

and

Orlando T. Ganal, Sr.; Dr. B.J. Williams; Dr. Corazon C. Hobbs, and Doe Defendants 1–100, Defendants.

No. 19020.

Supreme Court of Hawai'i.

July 10, 1996.

---

1. The appeal against defendant-appellee Enivel, Inc. dba Young Laundry & Dry Cleaning was dismissed by stipulation filed September 18, 1995.

2. The appeal against defendant-appellee Island Insurance Company, Limited was dismissed by stipulation filed on September 21, 1995.

Joseph P. H. Ahuna, Jr., Lionel M. Riley and John H. W. Yuen of the Law Offices of Joseph P. H. Ahuna, Jr., on the briefs, Kaneohe, for plaintiff-appellant Wendy Touchette, Individually, and as Special Administratrix of the Estate of Michael Robert Touchette, deceased, and Special Administratrix of the Estate of Kalah Kim Touchette, deceased minor, and as Special Administratrix of the Estate of Joshua Michael Touchette, deceased minor.

Ralph R. LaFountaine and Michael N. Tanoue of Matsumoto, LaFountaine & Chow, on the briefs, Honolulu, for defendant-appellee Mabel Ganal.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In this civil action concerning deaths and injuries stemming from an intentionally-started fire, plaintiffs-appellants Wendy Touchette, individually (Wendy) and as special administratrix [hereinafter, collectively, appellant] of the estates of Michael Robert Touchette (Michael), Kalah Kim Touchette (Kalah) and Joshua Michael Touchette (Joshua) [hereinafter, collectively, the Touchettes], appeal from the First Circuit Court's order granting defendant-appellee Mabel Ganal's (Mabel) motion to dismiss. For the following reasons, we vacate the circuit court's order and remand for further proceedings.

## I. BACKGROUND

The facts that form the basis of the present case are exhaustively set forth in this court's opinion in *State v. Ganal*, 81 Hawai'i 358, 362–65, 917 P.2d 370, 374–77 (1996). We therefore briefly recount only the pertinent facts.

In early 1991, allegedly due to a work-related injury, Orlando T. Ganal, Sr. (Ganal) became unable to work at his job at Young Laundry and was having difficulty obtaining workers' compensation. At roughly the same time, Mabel, Ganal's wife, began having an extra-marital affair with Michael's brother, David Touchette (David), a co-worker at her part-time job. Mabel and Ganal's marriage steadily deteriorated, and Mabel moved out of the house she shared with Ganal and moved into her parents' home in Waipahu.

During the late evening of August 25, 1991, Ganal broke into Mabel's parents' Waipahu home, shot and killed Mabel's parents, and shot and injured Mabel and Orlando T. Ganal, Jr., Mabel and Ganal's son.

Immediately thereafter, Ganal drove to the Touchettes' Kailua residence, where Ganal knew David to have stayed, blocked the outer doors shut, broke several windows, doused the interior rooms with gasoline, and set the house on fire. Although Wendy managed to escape the burning house alive, Michael, Wendy's husband, and Kalah and Joshua, Michael and Wendy's infant children, all eventually died as a result of thermal burns and smoke inhalation. Wendy was severely burned over approximately forty percent of her body and suffered scarring over much of her face. David was not in the house.

Immediately after starting the fire at the Touchettes' home, Ganal drove to the Young Laundry premises near the airport, poured gasoline in a second-floor office and started another fire. Although Young Laundry em-

ployees were present on the premises at the time of the fire, no one was injured.

On July 7, 1993, appellant filed a civil complaint against, among others,[3] Ganal and Mabel, alleging the following facts and claims for relief:

### COUNT I

. . . .

11. On August 25, 1991, DEFENDANT ORLANDO T. GANAL, SR., because of severe and extreme emotional distress and depression resulting from the conduct of the DEFENDANTS to be more fully described in this complaint, set fire to a house located at 515 Nowela Place in Kailua, Hawaii (hereinafter incident). MICHAEL ROBERT TOUCHETTE, deceased, PLAINTIFF WENDY TOUCHETTE, KALAH KIM TOUCHETTE, deceased minor, and JOSHUA MICHAEL TOUCHETTE, deceased minor, were in the house at 515 Nowela Place at the time DEFENDANT ORLANDO T. GANAL, SR. set fire to said house.

### COUNT II

. . . .

13. At the time of the incident, DEFENDANT MABEL GANAL was the wife of DEFENDANT ORLANDO T. GANAL, SR.

14. For a period of months before August 25, 1991, DEFENDANT MABEL GANAL was involved in an extra marital love affair with David Touchette who lived with the PLAINTIFFS at 515 Nowela Place before August 25, 1991.

15. DEFENDANT MABEL GANAL initiated and maintained a course of conduct which involved taunting and humiliating DEFENDANT ORLANDO T. GANAL, SR. by flaunting her extra marital love affair with David Touchette.

16. DEFENDANT MABEL GANAL's extra marital love affair with David Touchette, and her conduct of taunting and humiliating DEFENDANT ORLANDO T. GANAL, SR. with respect to that affair, caused DEFENDANT ORLANDO T. GANAL, SR. to suffer severe and extreme emotional and mental distress and depression.

17. Prior to the August 25, 1991 incident described in paragraph 11 of this Complaint, DEFENDANT MABEL GANAL, the wife of DEFENDANT ORLANDO T. GANAL, SR., knew, or in the exercise of reasonable diligence should have known of, DEFENDANT ORLANDO T. GANAL, SR.'s severe and extreme emotional and mental distress and depression, and/or instability and/or propensity and/or tendency to cause injury, even death to PLAINTIFFS.

18. Prior to the August 25, 1991 incident described in paragraph 11 of this Complaint, DEFENDANT MABEL GANAL had the opportunity and ability to warn PLAINTIFFS of DEFENDANT ORLANDO T. GANAL, SR.'s severe and extreme emotional and mental distress and depression, and/or instability and/or propensity and/or tendency to cause injury, even death, but, nevertheless negligently failed to do so.

19. Even though DEFENDANT MABEL GANAL knew or should have known that her husband, DEFENDANT ORLANDO T. GANAL, SR., was in need of supervision for the protection of others, DEFENDANT MABEL GANAL, nevertheless, failed to exercise reasonable care and/or to take other appropriate actions to prevent the injury and death to the PLAINTIFFS.

. . . .

### COUNT VI

47. As a direct and proximate result of DEFENDANT MABEL GANAL['s] ... actions described above, on August 25, 1991, DEFENDANT ORLANDO T. GANAL, SR., because of severe and extreme emotional and mental distress and depression arising out of the above described conduct of DEFENDANT MABEL GANAL ..., set PLAINTIFFS['] house at

---

3. The other named defendants were Enivel, Inc. dba Young Laundry & Dry Cleaning, Island Insurance Co., Ltd., Dr. B.J. Williams, and Dr. Corazon C. Hobbs.

515 Nowela Place on fire. DEFENDANT MABEL GANAL['s] ... actions described above, under the totality of the circumstances, caused and/or substantially contributed to cause DEFENDANT ORLANDO T. GANAL, SR.'s action described in paragraph 11 of this Complaint.

48. As a further direct and proximate cause of the actions and/or omissions of DEFENDANT ORLANDO T. GANAL, SR., the actions and/or omissions of DEFENDANT MABEL GANAL, ... described above, PLAINTIFF WENDY TOUCHETTE suffered, including but not limited to, severe burns to her face, lungs, legs, arms, torso, abdomen, shoulder, wrist, fingers, ankles, neck and back. PLAINTIFF WENDY TOUCHETTE also suffered mental anguish, great pain of body and mind, severe emotional distress, permanent scarring and disfigurement, loss of enjoyment of life and other injuries and damages to be shown at trial.

49. As a further direct and proximate cause of the actions and/or omissions of DEFENDANTS described above, PLAINTIFF WENDY TOUCHETTE suffered a loss of past and future income and/or a permanent impairment to her earning capacity, in amounts to be shown at trial.

50. As a further direct and proximate cause of the actions and/or omissions of the DEFENDANTS described above, PLAINTIFF WENDY TOUCHETTE has suffered and will suffer, hospital, medical, reconstructive surgery, rehabilitative, plastic surgery, and miscellaneous expenses. PLAINTIFFS ask leave of this Court to amend this Complaint to show the same at trial.

51. As a further direct and proximate cause of the actions and/or omissions of the DEFENDANTS described above, MICHAEL ROBERT TOUCHETTE, deceased, sustained burns over 85% percent of his body, brain damage, pulmonary damage, renal damage, internal injuries, and other bodily injuries; suffered mental anguish, great pain of body and mind, conscious pain and suffering, emotional distress, loss of enjoyment of life and/or other sufferings; and suffered death on September 23, 1991 as a result of his injuries he sustained from the fire of August 25, 1991.

52. As a further direct and proximate cause of the actions and/or omissions of the DEFENDANTS described above, KALAH KIM TOUCHETTE, deceased minor, sustained burns in excess of over 95% percent of her body, renal damage, pulmonary damage, and other bodily injuries; suffered mental anguish, great pain of body and mind, conscious pain and suffering, emotional distress, loss of enjoyment of life and/or other sufferings; and death.

53. As a further direct and proximate cause and negligence, actions and/or omissions of the DEFENDANTS, JOSHUA MICHAEL TOUCHETTE, deceased minor, sustained burns in excess of over 95% percent of his body, renal damage, pulmonary damage, and other bodily injuries; suffered mental anguish, great pain of body and mind, conscious pain and suffering, emotional distress, loss of enjoyment of life and/or other sufferings; and death.

54. As a further direct and proximate cause of the actions and/or omissions of the DEFENDANTS described above, PLAINTIFFS have suffered hospital, medical, rehabilitative, funeral and miscellaneous expenses and will incur such expenses in the future. PLAINTIFFS ask leave of this court to amend this Complaint to show same at trial.

55. As a further direct and proximate cause of the negligence, actions and/or omissions of the DEFENDANTS, PLAINTIFFS MICHAEL ROBERT TOUCHETTE, deceased, KALAH KIM TOUCHETTE, deceased minor, and JOSHUA MICHAEL TOUCHETTE, deceased minor, each sustained a loss of past and future excess earnings. PLAINTIFFS ask leave of this Court to amend this Complaint to show the same at trial.

*COUNT VII*

....

57. PLAINTIFF WENDY TOUCHETTE, was the spouse of MICHAEL ROBERT TOUCHETTE, deceased, and was the natural mother of KALAH KIM TOUCHETTE, deceased minor, and

JOSHUA MICHAEL TOUCHETTE, deceased minor.

58. As a direct and proximate cause of the actions and/or omissions of the DEFENDANTS described above, PLAINTIFF WENDY TOUCHETTE individually, suffered damages for loss of love and affection, including loss of society, companionship, support, marital care, attention, advice and counsel, filial care and attention, and other damages as set forth in Hawaii Revised Statutes § 663–3 and related statutes and amendments thereto.

### COUNT VIII

. . . .

60. The above actions and/or omissions of DEFENDANT ORLANDO T. GANAL, SR. and DEFENDANT MABEL GANAL described above, were so grossly negligent, outrageous, willful, wanton and/or reckless and done in conscious disregard of the rights and safety of the PLAINTIFFS and the public, as to justify the imposition of punitive and/or exemplary damages. PLAINTIFFS ask leave of this Court to assert and recover such damages should the evidence warrant such damages.

WHEREFORE, PLAINTIFFS above-named pray for judgment in an amount in excess of the minimum jurisdictional requirements of this Court against the above-named DEFENDANTS, jointly and severally, as follows:

1. General damages in an amount to be shown at trial.

2. Hedonic damages in an amount to be shown at trial.

3. Special damages in an amount to be shown at trial.

4. Punitive or exemplary damages for each Plaintiff in an amount, if any, warranted by the evidence presented at trial.

5. Plaintiffs' attorneys' fees, costs, prejudgment interest, and such other and further relief as the Court deemed proper in the premises.

On January 26, 1994, Mabel filed a motion to dismiss pursuant to Hawai‘i Rules of Civil Procedure (HRCP) Rule 12(b)(6),[4] asserting that appellant had failed to state a claim against her upon which relief could be granted. By order filed April 15, 1994, the circuit court granted Mabel's motion to dismiss, stating that "pursuant to § 315 Restatement of Torts (Second) and Hawaii case law[,] Defendant MABEL GANAL had no duty to control the conduct of ORLANDO T. GANAL, SR.[,] as no required 'special relationship' was alleged or shown at hearing." Appellant then filed a motion for reconsideration of the court's order, which was denied by order filed March 14, 1994. Mabel then moved for certification, pursuant to HRCP Rule 54(b),[5] of the circuit court's order granting her motion to dismiss, which the circuit court granted by order filed November 1, 1994. This timely appeal followed.

### II. STANDARD OF REVIEW

It is well settled that:

whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Bold emphasis in original.)

---

4. HRCP Rule 12(b) provides in pertinent part:

**DEFENSES AND OBJECTIONS—WHEN AND HOW PRESENTED—BY PLEADING OR MOTION—MOTION FOR JUDGMENT ON THE PLEADINGS.**
(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.]
(Bold emphasis in original.) ·

5. HRCP Rule 54(b) provides:

**Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim· for relief is presented in an action,

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. *Ravelo v. County of Hawaii,* 66 Haw. 194, 198, 658 P.2d 883, 886 (1983) (quoting *Midkiff* [*v. Castle & Cooke, Inc.*], 45 Haw. [409,] 414, 368 P.2d [887,] 890 [ (1962) ]); *Marsland v. Pang,* 5 Haw.App. 463, 474, 701 P.2d 175, 185–86, *cert. denied,* 67 Haw. 686, 744 P.2d 781 (1985). We must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. *Ravelo,* 66 Haw. at 199, 658 P.2d at 886. For this reason, in reviewing [a] circuit court's order dismissing [a] complaint ... our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true. *Au [v. Au],* 63 Haw. [210,] 214, 626 P.2d [173,] 177 (1981).

*Baehr v. Lewin,* 74 Haw. 530, 545, 852 P.2d 44, 52, *reconsideration granted in part and denied in part,* 74 Haw. 650, 875 P.2d 225 (1993).

## III. *DISCUSSION*

### A. *The Circuit Court Correctly Concluded that Mabel Did Not Owe Appellant A Duty Pursuant to Restatement (Second) of Torts §§ 314 or 315.*

■ As previously noted, the circuit court concluded that Mabel did not owe appellant a duty pursuant to *Restatement (Second) of Torts,* §§ 315 and 314A (1965), because Mabel lacked a requisite "special relationship" with both appellant and Ganal. We agree.

Sections 314 through 325 of the *Restatement (Second) of Torts* address a person's duty to act for the protection of others. The general rule governing this duty is set out in section 314, which provides:

Duty to Act for Protection of Others

The fact that the actor realizes or should realize that action on his [or her] part is necessary for another's aid or protection

does not of itself impose upon him [or her] a duty to take such action.

Sections 314A through 325 address special applications of the general principle set forth in section 314. Comment a to section 314 provides:

The general rule stated in this Section should be read together with other sections which follow. Special relations may exist between the actor and the other, as stated in § 314 A, which impose upon the actor the duty to take affirmative precautions for the aid or protection of the other. The actor may have control of a third person, or of land or chattels, and be under a duty to exercise such control, as stated in §§ 316–320. The actor's prior conduct, whether tortious or innocent, may have created a situation of peril to the other, as a result of which the actor is under a duty to act to prevent harm, as stated in §§ 321 and 322. The actor may have committed himself [or herself] to the performance of an undertaking, gratuitously or under contract, and so may have assumed a duty of reasonable care for the protection of the other, or even of a third person, as stated in §§ 323, 324 and 324 A.

*Restatement (Second) of Torts,* § 314 comment a. *See also Restatement (Second) of Torts,* § 315, comment a ("The rule stated in this Section is a special application of the general rule stated in § 314.").

In *Cuba v. Fernandez,* 71 Haw. 627, 801 P.2d 1208 (1990), this court discussed the general principles governing when a person would have a duty to control the conduct of others pursuant to sections 315 and 314A and noted:

A prerequisite to any negligence action is the existence of a duty owed by the defendant to the plaintiff. *See Knodle v. Waikiki Gateway Hotel, Inc.,* 69 Haw. 376, 385, 742 P.2d 377, 383 (1987). Whether such a duty exists is a question of law. *Id.* With respect to a duty to control the conduct of others, Hawaii law follows the *Restatement (Second) of Torts* § 315 (1965), which provides:

There is no duty so to control the conduct of a third person as to prevent him

[or her] from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

*See Wolsk v. State*, 68 Haw. 299, 301, 711 P.2d 1300, 1302 (1986). The "special relations" referred to in § 315 are defined in *Restatement (Second) of Torts* § 314A (1965) to include the following four situations:

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his [or her] guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his [or her] invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his [or her] normal opportunities for protection is under a similar duty to the other.

71 Haw. at 631–32, 801 P.2d at 1211. *See also Wolsk*, 68 Haw. at 302, 711 P.2d at 1302. Thus, applied to the present case, Mabel would owe a duty to appellant under sections 315 and 314A only if Mabel bore a "special relation" to either appellant or Ganal.

■ Section 314A contains a caveat stating that "[t]he Institute expresses no opinion as to whether there may not be other relations which impose a similar duty[,]" and this court has also recognized that the list of relationships delineated in section 314A is not exclusive or exhaustive. *See, e.g., Doe v. Grosvenor Properties (Hawaii) Ltd.*, 73 Haw. 158, 163, 829 P.2d 512, 515 (1992) ("Section 314A of the Restatement sets forth a *non-exclusive* list of special relationships upon which a court may find a duty to protect." (Emphasis added.)); *Cuba*, 71 Haw. at 632, 801 P.2d at 1211 ("The 'special relations' referred to in § 315 are defined in *Restatement (Second) of Torts* § 314A (1965) *to include* the following four situations[.]" (Emphasis added.)). Moreover, comment (b) to section 314A provides:

This Section states exceptions to the general rule, stated in § 314, that the fact that the actor realizes or should realize that his [or her] action is necessary for the aid or protection of another does not in itself impose upon him [or her] any duty to act. The duties stated in this Section arise out of special relations between the parties, which create a special responsibility, and take the case out of the general rule. The relations listed are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found. There may be other such relations, as for example that of husband and wife, where the duty is recognized by the criminal law, but there have as yet been no decisions allowing recovery in tort in jurisdictions where negligence actions between husband and wife for personal injuries are permitted. The question is therefore left open by the Caveat, preceding Comment *a* above. The law appears, however, to be working slowly toward a recognition of the duty to aid or protect in any relation of dependence or of mutual dependence.

■ Appellant does not argue on appeal, nor did she argue in opposition to Mabel's motion to dismiss in the circuit court, that she had a "special relation" with Mabel justifying application of the principles of section 315. The dispositive issue, therefore, is whether Mabel's relationship with Ganal constitutes a "special relation" contemplated by section 315, or more specifically, whether Mabel's marriage relationship with Ganal alone justifies the imposition of a duty to control Ganal for the protection of others pursuant to section 315.

Although this issue is one of first impression in Hawai'i, the few other jurisdictions that have had occasion to consider the issue

to date have held that a marriage relationship does not fall within the scope of the "special relations" contemplated by section 315. For example, in *Rozycki v. Peley,* 199 N.J.Super. 571, 489 A.2d 1272 (1984), the parents of a group of young boys who were victims of sexual and physical assault by the defendant brought an action against the defendant and the defendant's wife, alleging, *inter alia,* that the defendant's wife had a duty to warn the boys of her husband's pedophilia because her marriage to her husband constituted a "special relation" within the scope of section 315. The Superior Court of New Jersey declined to impose a duty on the defendant's wife, holding in pertinent part that:

Requiring [the wife] to report on her husband's activities in this manner violates the public policy of encouraging and fostering the marital relationship. As the *McIntosh [v. Milano,* 168 *N.J.Super.* 466, 403 A.2d 500 (1979) ] court stressed, the public interest involved is one of the key factors in determining whether a duty should be imposed.

There is a strong public interest in protecting the marital relationship. The spouse of an accused in a criminal action, for example, shall not testify except in very limited circumstances. *Evid. R.* 23(2). "No other testimonial privilege sweeps so broadly." *Trammel v. United States,* 445 U.S. 40, 51, 100 *S.Ct.* 906, 913, 63 *L. Ed.2d* 186 (1980). The privilege "furthers the important public interest in marital harmony." *Ibid.; see also In re Vitabile,* 188 *N.J.Super.* 61, 66, 455 A.2d 1151 (App.Div. 1983).

*Evid. R.* 28 is also designed to foster the marital relationship by protecting confidential communications between spouses....

Thus, requiring a wife to inform her neighbors of her husband's alleged sexual proclivities, while not violative of the requirements of these evidentiary privileges, would certainly denigrate their underlying policy considerations of promoting and encouraging marriage. A spouse's duties include being loyal to their husband or wife and giving them the benefit of their com-panionship and society.... To require one spouse to inform on the other strikes at the very heart of this obligation of loyalty. Imposing a duty to warn of this nature would require a spouse to tell the world at large that one's husband or wife is, in a sense, "unfit" or dangerous. The spouse is put in the untenable position of either remaining silent out of a sense of loyalty or protection and thereby incurring civil liability, or warning the neighbors (or whatever third party may be involved) and incurring their spouse's anger, disappointment or shame.

489 A.2d at 1276 (some citations omitted).

Similarly, in *Wise v. Superior Court,* 222 Cal.App.3d 1008, 272 Cal.Rptr. 222 (1990), the defendant's husband mounted a sniper attack from the roof of his home, severely injuring a number of passing motorists, including the plaintiffs, before taking his own life. The plaintiffs brought suit against the defendant, asserting that the defendant had a duty, pursuant to section 315, to warn the the plaintiffs of her husband's conduct. The defendant moved for a demurrer and the superior court denied her motion. In reversing the superior court, the California Court of Appeal held that:

In general, one owes no duty to control the conduct of a third person to prevent him [or her] from causing physical harm to another, absent a special relationship between the defendant and either the person whose conduct needs to be controlled or the foreseeable victim of that conduct....

The first category, special relationships between the defendant and the person whose conduct needs to be controlled, includes the relationship between parent and child (Rest. Torts 2d, *supra,* § 316), master and servant (§ 317), the possessor of land or chattels (who has a duty to control the conduct of a licensee) (§ 318), and "[o]ne who takes charge of a third person whom he [or she] knows or should know to be likely to cause bodily harm to others if not controlled...." (§ 319) In all of the above relationships, the *ability* to control the third party is essential. " '[T]he absence of such ability is fatal to a claim of legal responsibility'.... Where, as in the

instant case, the natural relationship between the parties ... creates no inference of an ability to control, the actual custodial ability must affirmatively appear."

Plaintiffs assert that [defendant] assumed responsibility for decedent and that he was "dependent upon [defendant's] supervision and control." The First Amended Complaint is replete with facts which belie plaintiffs' claim. It is [defendant's] *lack* of control which is apparent, and in fact the picture painted by the First Amended Complaint is of an individual whose behavior was beyond the control of anyone, including himself.

272 Cal.Rptr. at 224–25 (citations and some brackets omitted) (emphases in original). *See also T.A. v. Allen,* 447 Pa.Super. 302, 669 A.2d 360 (1995) (wife's co-ownership of property in tenancy by entireties insufficient to merit imposition of section 315 duty to warn or protect husband's grandchildren from sexual abuse by husband).

We agree with the reasoning of the *Rozycki* and *Wise* courts and likewise hold that, without more, a marital relationship does not alone constitute a "special relation" under section 315 so as to merit the imposition of a duty to warn others or control the actions of a spouse. We therefore hold that the circuit court's order granting Mabel's motion to dismiss was correct insofar as it held that Mabel did not owe a duty to appellant under sections 315 and 314A because Mabel did not bear a "special relation" to either appellant or Ganal as contemplated by the language of section 315.

B. *The Circuit Court Erred in Failing to Consider the Presence of A Duty Under Restatement (Second) of Torts §§ 302, 302A and 302B.*

■ Appellant next argues that the circuit court erred in granting Mabel's motion to dismiss because the circuit court failed to consider whether, pursuant to the *Restatement (Second) of Torts,* §§ 302, 302A, and 302B, Mabel had a duty to refrain from conduct that would create an unreasonable risk of harm to another through Ganal's conduct. We agree.

*Restatement (Second) of Torts,* § 302 (1965) sets out the general rule regarding a risk of direct or indirect harm. Section 302 provides:

A negligent act or omission may be one which involves an unreasonable risk of harm to another through either

(a) the continuous operation of a force started or continued by the act or omission, or

(b) the foreseeable action of the other, a third person, an animal, or a force of nature.

Sections 302A and 302B are "special application[s] of Clause (b) of [section 302]," *Restatement (Second) of Torts,* § 302 comment b—section 302A addressing "the risk of harm through the negligent or reckless conduct of others[,]" *id.,* and section 302B addressing "the risk of the intentional or criminal conduct of others[.]" *Id.*

Section 302A provides:

Risk of Negligence or Recklessness of Others

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person.

Section 302B provides:

Risk of Intentional or Criminal Conduct

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

The duty described under sections 302, 302A, and 302B differs from the duty described under sections 315 and 314A in that sections 302, 302A, and 302B posit a duty based on negligent acts or omissions, whereas sections 315 and 314A address only negligent omissions, or failures to act. Comment a to section 302 provides:

This section is concerned only with the negligent character of the actor's conduct, and not with his [or her] duty to avoid the unreasonable risk. In general, anyone

who does an affirmative act is under a duty to others to exercise the care of a reasonable [person] to protect them against an unreasonable risk of harm to them arising out of the act. The duties of one who merely omits to act are more restricted, and in general are confined to situations where there is a special relation between the actor and the other which gives rise to the duty.

*Restatement (Second) of Torts,* § 302 comment a (1965).

This distinction has also been phrased in terms of "misfeasance" and "nonfeasance." Comment c to section 314 provides:

The origin of the rule lay in the early common law distinction between action and inaction, or "misfeasance" and "non-feasance." In the early law one who injured another by a positive affirmative act was held liable without any great regard even for his [or her] fault. But the courts were far too much occupied with the more flagrant forms of misbehavior to be greatly concerned with one who merely did nothing, even though another might suffer serious harm because of his [or her] omission to act. Hence liability for non-feasance was slow to receive any recognition in the law. It appeared first in, and is still largely confined to, situations in which there was some special relation between the parties, on the basis of which the defendant was found to have a duty to take action for the aid or protection of the plaintiff.

*Restatement (Second) of Torts,* § 314 comment c (1965).

Although we have had occasion to discuss the duty set out in sections 302, 302A, and 302B in the past, *see, e.g., Haworth v. State,* 60 Haw. 557, 592 P.2d 820 (1979) (reversing a judgment in favor of the state after a bench trial on a claim that, *inter alia,* the state breached its duty, pursuant to section 302A, to exercise reasonable care to avoid the danger of Haworth injuring himself while on a prison work assignment); *see also Brown v. Clark Equip. Co.,* 62 Haw. 530, 540, 618 P.2d 267, 274 (1980) (recognizing section 302A, although trial court's refusal to give jury instruction reciting section 302A was proper because instruction was ultimately

unnecessary), the misfeasance/nonfeasance distinction central to the dispositive issue in the present case is perhaps most exhaustively discussed in the California Court of Appeal's decision in *Pamela L. v. Farmer,* 112 Cal.App.3d 206, 169 Cal.Rptr. 282 (1980).

In *Pamela L.,* the three minor plaintiffs, who were allegedly sexually molested, brought suit against the alleged molester and his wife. The Superior Court of California sustained the wife's demurrer, and the children appealed. Rejecting the wife's argument that she owed no duty to the minors, the California Court of Appeal held:

Respondent cites the principle that generally a person has no duty to control the conduct of a third person, nor to warn those endangered by such conduct, in the absence of a "special relationship" either to the third person or to the victim. (Rest., 2d Torts, sec. 315; *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 435, 131 Cal.Rptr. 14, 551 P.2d 334; *Nipper v. California Auto. Assigned Risk Plan,* 19 Cal.3d 35, 46–47, 136 Cal.Rptr. 854, 560 P.2d 743; *Coulter v. Superior Court,* 21 Cal.3d 144, 155, 145 Cal.Rptr. 534, 577 P.2d 669.) *However, this rule is based on the concept that a person should not be liable for "nonfeasance" in failing to act as a "good Samaritan." It has no application where the defendant, through his or her own action (misfeasance) has made the plaintiff's position worse and has created a foreseeable risk of harm from the third person. In such cases the question of duty is governed by the standards of ordinary care.* (*Weirum v. R.K.O. General, Inc.,* 15 Cal.3d 40, 49, 123 Cal.Rptr. 468, 539 P.2d 36; see also *Tarasoff v. Regents of University of California, supra,* 17 Cal.3d at p. 435, fn. 5, 131 Cal. Rptr. 14, 551 P.2d 334.)

*This latter principle is embodied in Restatement Second of Torts section 302B which provides: "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."* (See

*O'Hara v. Western Seven Trees Corp.,* 75 Cal.App.3d 798, 804, 142 Cal.Rptr. 487.)

*Here respondent did not merely fail to prevent harm to plaintiffs from Richard. Respondent by her own acts increased the risk of such harm occurring.* According to the allegations in paragraph V, respondent "encouraged and invited" the children to play in her swimming pool, prepared refreshments to "entice" the children, and "encouraged the parents ... to permit" the children to come to her premises by telling them it would be perfectly safe for the girls to swim when respondent was not there, because her husband would be there. This was done, it is alleged, with knowledge that Richard had molested women and children in the past and that it was reasonably foreseeable he would do so again if left alone with the children on the premises. By encouraging and inviting the children to be alone with Richard under circumstances where he would have peculiar opportunity and temptation to commit such misconduct, respondent could be held to have unreasonably exposed the children to harm.

169 Cal.Rptr. at 284 (emphases added and footnote omitted).

▪ We agree with the reasoning of *Pamela L.* and adopt it. Although, as previously noted, we have recognized the duty described in sections 302, 302A and 302B in the past, for purposes of clarity, we expressly hold that: (1) a negligent act or omission may be one which involves an unreasonable risk of harm to another through either (a) the continuous operation of a force started or continued by the act or omission, or (b) the foreseeable action of the other, a third person, an animal or a force of nature; (2) an act or an omission may also be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person; and (3) an act or an omission also may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

▪ As previously discussed, the circuit court's role on a HRCP Rule 12(b)(6) motion to dismiss for failure to state a claim, and, likewise, this court's role on appellate review, is to "view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under *any alternative theory.*" *Baehr,* 74 Haw. at 545, 852 P.2d at 52 (emphasis added). *See Makanui v. Department of Educ.,* 6 Haw.App. 397, 403, 721 P.2d 165, 170 (1986) ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that no relief can be granted under any set of facts that can be proved in support of its allegations." (Citations omitted.)); 5A C. Wright & A. Miller, *Federal Practice and Procedure,* § 1357 (2d. ed.1990) at 344–45 ("As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. In other words, dismissal is justified only when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim." (Footnotes omitted.)).

In the present case, a review of the complaint, the memoranda in support of, and in opposition to, Mabel's motion to dismiss, the transcripts of the hearing, and the circuit court's order granting the motion, indicates that the circuit court granted Mabel's motion to dismiss *solely* on the ground that Mabel lacked a "special relation" with appellant and/or Ganal and, therefore, concluded that Mabel did not owe a duty to appellant. Although the circuit court's holding, as previously discussed, was correct regarding the question of Mabel's duty to appellant to affirmatively warn or to control Ganal pursuant to sections 315 and 314A, the circuit court failed to determine if Mabel owed a duty to appellant pursuant to other authority, especially in view of appellant's counsel's many attempts to direct the circuit court's attention to the potential viability of appellant's claims against Mabel based on the breach of the duty set out in sections 302, 302A and/or 302B.

Similar to *Pamela L.*, appellant's complaint against Mabel in the present case alleges affirmative conduct, or alleged "misfeasance" on the part of Mabel, in that "DEFENDANT MABEL GANAL *initiated and maintained a course of conduct which involved taunting and humiliating DEFENDANT ORLANDO T. GANAL, SR. by flaunting her extra marital love affair with David Touchette*," (emphasis added), and that "*DEFENDANT MABEL GANAL's extra marital love affair with David Touchette, and her conduct of taunting and humiliating DEFENDANT ORLANDO T. GANAL, SR. with respect to that affair,* caused DEFENDANT ORLANDO T. GANAL, SR. to suffer severe and extreme emotional and mental distress and depression," (emphasis added), thereby implicating the duty described by sections 302, 302A and 302B.

Mabel retorts by asserting that sections 302, 302A and 302B do not apply to the situation at hand and essentially argues that the circuit court's failure to consider the issue was harmless. We disagree.

As previously noted, section 302 deems an act or omission negligent if it involves "an unreasonable risk of harm to another through ... the *foreseeable* action of the other, [or] a third person[.]" Similarly, sections 302A and 302B deem an act or omission negligent "if the actor *realizes or should realize* that it involves an unreasonable risk of harm to another."

Appellant's complaint provides in pertinent part:

Prior to the August 25, 1991 incident ... DEFENDANT MABEL GANAL, the wife of DEFENDANT ORLANDO T. GANAL, SR., *knew, or in the exercise of reasonable diligence should have known* of, DEFENDANT ORLANDO T. GANAL, SR.'s severe and extreme emotional distress and depression, and/or instability and/or propensity and/or tendency to cause injury, even death to PLAINTIFFS.

(Emphasis added.)

Considering these allegations as true, as this court must on appellate review of a dismissal pursuant to HRCP Rule 12(b)(6), *see Baehr*, 74 Haw. at 545, 852 P.2d at 52, it is clear, and we so hold, that the allegations state a claim that potentially could warrant relief under a theory based on the duty stated in sections 302, 302A and/or 302B.

## IV. CONCLUSION

Based on the foregoing, we vacate the circuit court's order granting Mabel's motion to dismiss and remand for further proceedings consistent with this opinion.