**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000916
09-DEC-2015
08:06 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

FLORENCIO E. DELA CRUZ, ANASTACIA A. DELA CRUZ,
and JENNIFER M. RESPECIO, Plaintiffs-Appellants,
v.
IRENE B. QUEMADO, MARVIN QUEMADO, JR.,
BRYAN T. HIGA, Defendants-Appellees,
and
DOE DEFENDANTS 1-100, Defendants

NO. CAAP-14-0000916

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-1089)

DECEMBER 9, 2015

NAKAMURA, C.J., FOLEY AND REIFURTH, JJ.

OPINION OF THE COURT BY FOLEY, J.

Plaintiffs-Appellants Florencio E. Dela Cruz
(**Florencio**), Anastacia A. Dela Cruz (**Anastacia**), and Jennifer M.
Respecio (**Respecio**) (collectively, **Appellants**) appeal from the
following entered in the Circuit Court of the First Circuit[1]
(**circuit court**):

(1) "Findings of Fact, Conclusions of Law, and Order
Denying Plaintiffs' Motion for Default Judgment Against Defendant

---

[1] The Honorable Karen T. Nakasone presided.

Irene B. Quemado Filed on 5/10/2013, Notice of Entry" (**FOF/COL**), entered on December 2, 2013;

(2) "Order Denying Plaintiffs' Motion for Reconsideration of Findings of Fact, Conclusions of Law, and Order Denying Plaintiffs' Motion for Entry of Default Judgment Against Defendant Irene B. Quemado," entered on January 3, 2014; and

(3) "Final Judgment," entered on June 6, 2014.

On appeal, Appellants contend the circuit court erred in:

(1) denying Appellants' motion for default judgment against Defendant-Appellee Irene Quemado (**Irene**);

(2) concluding that it was not reasonably foreseeable that Defendant-Appellee Marvin Quemado (**Marvin**) would commit a robbery; and

(3) concluding that Irene's affirmative conduct did not create the circumstances that afforded Marvin and Defendant-Appellee Brian Higa (**Higa**) the opportunity to commit the robbery.

## I. BACKGROUND

The circuit court's undisputed findings of fact (**FOFs**) indicate that Florencio and Anastacia were the owners of Flor and Annie Jewelry. On June 1, 2006, Florencio and Anastacia went to Irene's home to collect money, repair a bracelet, and exchange jewelry with Irene. While Florencio and Anastacia displayed their jewelry to Irene, Irene invited her son, Marvin, to see, examine, and handle the jewelry.

Marvin examined the jewelry and asked if he could try on a gold necklace. Unknown to Florencio and Anastacia, Marvin had a criminal history of using and promoting illegal drugs, with felony convictions for possessing and promoting drugs. Irene was aware of Marvin's criminal history but did not tell Florencio and Anastacia. Florencio showed Marvin a gold necklace, and Marvin took it upstairs to try on. Marvin was gone for about twenty minutes before Irene went upstairs to check on him. Irene was gone for fifteen minutes before she and Marvin returned downstairs where Florencio and Anastacia were located. Marvin begged Irene to purchase the gold necklace for him, but she

2

refused.

Irene then told Marvin that Florencio and Anastacia had brought with them more jewelry in a closed aluminum case. Marvin asked to see the jewelry in the aluminum case. Florencio and Anastacia opened the aluminum case and displayed the jewelry to Marvin. Marvin handled the jewelry in the aluminum case, asked the price of several pieces of jewelry, and commented that the jewelry was "expensive." Marvin then left the house.

Florencio and Anastacia attempted to leave at the same time as Marvin, but were stopped by Irene because she wanted to "talk story." Florencio and Anastacia left Irene's house around 11:55 a.m. for another appointment they had at the Golden Coin Restaurant. Florencio and Anastacia arrived at the Golden Coin Restaurant about 12:00 p.m. when they noticed they had a flat tire. Florencio and Anastacia drove to put air in the flat tire and returned to the Golden Coin Restaurant about 12:15 p.m.

When Florencio exited his vehicle and retrieved the aluminum jewelry case from the trunk, Higa pulled up behind Florencio's car in a light blue Chevrolet Blazer, jumped out of the Blazer, pulled a camouflage mask over his face, pointed a black semi-automatic handgun at Florencio, and yelled, "This is a holdup! I'll kill you!" Higa then fired a round at Florencio from five to seven feet away, but missed.

Florencio grabbed the aluminum jewelry case in an attempt to protect his jewelry from Higa. Higa shoved the gun into Florecio's stomach and fired a second round, but this time the gun malfunctioned. Higa grabbed the aluminum jewelry case from Florencio and then almost ran Florencio over as he sped away in his Blazer.

Irene was not present nor involved in the robbery.[2] At the time of the robbery, Anastacia was sitting in her car talking to her daughter, Respecio, on a cellular phone. Anastacia witnessed the robbery and Respecio, from over the phone, heard the commotion associated with Florencio, her father, being

---

[2]    The circuit court's undisputed FOFs indicate "there was a lack of evidence to establish that [Irene] participated, facilitated, or assisted [Marvin] and [Higa] in the planning and/or commission of the crimes against [Florencio and Anastacia]."

robbed.

Higa and Marvin were later apprehended, arrested, and indicted in federal court for counts of Conspiracy to Commit a Hobbs Act Robbery, Hobbs Act Robbery, and Using and Carrying a Firearm During and In Relation to a Crime of Violence. Higa and Marvin pled guilty to those three charges. Higa and Marvin were sentenced to imprisonment and ordered to pay restitution to Florencio and Anastacia. The U.S. District Court for the District of Hawaiʻi filed a Judgment in favor of Florencio and Anastacia, finding Higa and Marvin jointly and severally liable for restitution in the amount of $558,085.42.

On May 30, 2008, Appellants filed a civil complaint against Irene, Marvin, and Higa. The complaint alleged, *inter alia*, that Irene was jointly and severally liable for damages arising from Marvin and Higa's conduct.

On December 29, 2009, the circuit court found Marvin and Higa had "failed to plead or otherwise defend this action" and declared that they were in default. On March 6, 2013, the circuit court also entered default against Irene for "fail[ing] to discuss or attempt to negotiate a settlement prior to the conference, fail[ing] to have a person authorized to settle the case present at the conference, and fail[ing] to deliver a confidential settlement letter to the Judge five (5) working days prior to the date of the settlement conference." The circuit court ordered Irene to pay Appellants' attorneys' reasonable expenses and fees in the amount of $2,074.25.

On May 10, 2013, Appellants filed "Plaintiffs' Motion for Entry of Default Judgment Against [Irene]" (**Motion for Default Judgment**). On October 14, 2013, Appellants filed "Plaintiffs' Supplemental Memorandum in Support of Plaintiffs' Motion for Entry of Default Judgment Against [Irene]." On October 18, 2013, the circuit court held a proof hearing on Irene's liability, pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 55(b).[3]

---

[3]     HRCP Rule 55 provides in relevant part:

**Rule 55.   DEFAULT.**

(continued...)

On December 2, 2013, the circuit court entered its FOF/COL. In its conclusions of law (**COLs**), the circuit court determined:

> 8. While [Irene] knew her son had a criminal record of drug convictions, the fact of such criminal record does not establish an unreasonable risk that her son would commit a violent crime such as an armed robbery. Convictions for drug possession and/or promotion, in this court's view, are materially different and distinguishable from crimes of violence such as assault, terroristic threatening, robbery, murder, and firearm related offenses.
>
> 9. [Irene's] affirmative acts during the meeting with [Florencio and Anastacia], including inviting [Marvin] to handle and try on [Florencio and Anastacia's] jewelry, did not create or expose [Appellants] to a recognizable, high degree of risk of harm, as contemplated by the Restatement (Second) of Torts, that [Marvin] would commit a violent armed robbery against them.
>
> . . . .
>
> 16. For the foregoing reasons, the court is constrained to conclude, that the law does not extend so far as to establish negligence on the part of [Irene]. As the court concludes that there is insufficient factual and legal bases to warrant imposition of liability beyond [Marvin] and [Higa], to reach [Irene], the requested Judgment against [Irene] is respectfully denied.

On December 12, 2013, Appellants filed a motion for reconsideration of the circuit court's FOF/COL, which the circuit court denied on January 3, 2014.

On June 6, 2014, the circuit court entered its Final Judgment. On July 1, 2014, Appellants filed a notice of appeal.

## II. STANDARD OF REVIEW

### A. Default Judgment

When reviewing an order denying a motion for default

---

[3](...continued)

. . . .

**(b) Judgment.** Judgment by default may be entered as follows:

. . . .

(2) By the Court. . . . If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.

judgment, the appellate court examines the evidence adduced at the liability hearing and determines whether the evidence presented would be sufficient at trial to overcome a motion for directed verdict. See Hupp v. Accessory Distribs., Inc., 1 Haw. App. 174, 180, 616 P.2d 233, 237 (1980). "It is well settled that a trial court's rulings on directed verdict or [judgment not withstanding the verdict (**JNOV**)] motions are reviewed *de novo*." Nelson v. Univ. of Hawaii, 97 Hawai'i 376, 393, 38 P.3d 95, 112 (2001).

> Verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the jury's findings. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Id. (brackets omitted) (quoting Carr v. Strode, 79 Hawai'i 475, 486, 904 P.2d 489, 500 (1995)).

**B. COLs**

> [An appellate] court reviews the trial court's COLs de novo. A COL is not binding upon an appellate court and is freely reviewable for its correctness. Moreover, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.

Bhakta v. Cnty. of Maui, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (citations, internal quotation marks, and brackets in original omitted).

**C. FOFs**

"In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (citations and internal quotation marks omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)). "[A] FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. [The Hawai'i Supreme Court has] defined 'substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of

reasonable caution to support a conclusion." Leslie v. Estate of Tavares, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999) (citations and internal quotation marks omitted).

## III. DISCUSSION

Appellants contend the circuit court "erred in denying Appellants' Motion for Default Judgment because there was evidence adduced at the liability hearing sufficient to overcome a motion for directed verdict." Appellants specify, "After disregarding conflicting evidence, giving to the Appellants' evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn in Appellants' favor, it can be said that there is evidence to support a jury verdict in their favor." We disagree as a matter of law.

The circuit court concluded that "it was not reasonably foreseeable that an individual with a known history of felony drug convictions would commit a violent crime of armed robbery." Appellants argue that there was a direct nexus between Marvin's crime and his drug use, making it reasonably foreseeable that Marvin would rob Florencio and Anastacia if the situation presented itself. We disagree.

The general principle that "a person has no duty to control the conduct of a third person, nor to warn those endangered by such conduct, in the absence of a 'special relationship' either to the third party or to the victim" is based on the concept that a person should not be liable for "nonfeasance" (i.e., the failure to act as a "good Samaritan"). Touchette v. Ganal, 82 Hawai'i 293, 302, 922 P.2d 347, 356 (1996) (quoting Pamela L. v. Farmer, 112 Cal. App.3d 206, 209 (Cal. App. 1980)). Adopting the reasoning of the California Court of Appeals in Pamela L., the Hawai'i Supreme Court held that the general rule has "no application where the defendant, through his or her own action (misfeasance)[,] has made the plaintiff's position worse and has created a foreseeable risk of harm from the third person." Touchette, 82 Hawai'i at 302, 922 P.2d at 356 (emphasis omitted) (quoting Pamela L., 112 Cal. App.3d at 209). "In such cases, the question of duty is governed by the standards

of ordinary care." Touchette, 82 Hawai'i at 302, 922 P.2d at 356 (quoting Pamela L., 112 Cal. App.3d at 209).

In Touchette, the supreme court recognized a duty to refrain from negligent acts or omissions that would create an unreasonable risk of harm to another. Id. at 303, 922 P.2d at 357. Summarizing the Restatement (Second) of Torts §§ 302 (1965),[4] 302A (1965),[5] 302B (1965),[6] the supreme court held that:

> (1) a negligent act or omission may be one which involves an unreasonable risk of harm to another through either (a) the continuous operation of a force started or continued by the act or omission, or (b) the foreseeable action of the other, a third person, an animal or a force of nature; (2) an act or an omission may also be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person; and (3) an act or an omission also may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

Id. at 303, 922 P.2d at 357 (emphasis added).

"[I]n the context of determining the existence and scope of a duty, foreseeability is a question of law for the court to resolve." Pulawa v. GTE Hawaiian Tel, 112 Hawai'i 3,

---

[4]    Restatement (Second) of Torts § 302 provides:

**§ 302 Risk of Direct or Indirect Harm**
A negligent act or omission may be one which involves an unreasonable risk of harm to another through either

(a) the continuous operation of a force started or continued by the act or omission; or

(b) the foreseeable action of the other, a third person, an animal, or a force of nature.

[5]    Restatement (Second) of Torts § 302A provides:

**§ 302A Risk of Negligence or Recklessness of Others**

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person.

[6]    Restatement (Second) of Torts § 302B provides:

**§ 302B Risk of Intentional or Criminal Conduct**

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

13, 143 P.3d 1205, 1215 (2006). "Foreseeability as it impacts duty determinations refers to the knowledge of the risk of injury to be apprehended." Id. (emphasis omitted) (quoting Clohesy v. Food Circus Supermarkets, Inc. 694 A.2d 1017, 1021 (N.J. 1997)). Additionally, "[t]he risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care." Pulawa, 112 Hawai'i at 13, 143 P.3d at 1215 (emphasis and brackets omitted) (quoting Clohesy, 694 A.2d at 1021).

The circuit court had the discretion at the liability hearing to require proof that the risk of being robbed by Marvin outside of Irene's home was an unreasonable risk of harm that fell within the range of Irene's apprehension, given Marvin's prior drug convictions. See Pulawa, 112 Hawai'i at 13, 143 P.3d at 1215; see also Nelson, 97 Hawai'i at 393, 38 P.3d at 112. The question before us is whether it was foreseeable that Irene inviting Marvin to examine Florencio and Anastacia's jewelry would result in Marvin later robbing Florencio and Anastacia.

The circuit court's FOF/COL determined:

> 8. While [Irene] knew her son had a criminal record of drug convictions, the fact of such criminal record does not establish an unreasonable risk that her son would commit a violent crime such as an armed robbery. Convictions for drug possession and/or promotion, in this court's view, are materially different and distinguishable from crimes of violence such as assault, terroristic threatening, robbery, murder, and firearm related offenses.

The circuit court concluded that it was not "reasonably foreseeable that [Marvin] would commit a violent armed robbery when he had a drug possession or drug promotion conviction, unlike the situation in Pamela L."

In Pamela L., three minors were sexually molested and brought suit against their alleged molester and his wife. Pamela L., 112 Cal. App.3d at 208-09. After the trial court dismissed the minors' complaint against the wife, the appellate court held that the minors' alleged facts were sufficient to bring a negligence claim against the wife. Id. at 211-12.

The minors' complaint alleged that the wife had encouraged the minors' parents to permit the minors to come to

her home and swim in their pool under circumstances where she knew her husband might be alone with the minors. Id. at 208. The complaint further alleged that the wife had specific knowledge that her husband previously molested other women and children and that it was reasonably foreseeable he would do it again if left alone with minors. Id. The court in Pamela L. concluded that "[a]ssuming the allegations of [the husband's] past conduct and [the wife's] knowledge thereof were adequately proved, the most important factor, foreseeability of harm, is great." Id. at 211.

Here, unlike the facts alleged in Pamela L., there are no facts indicating that Irene knew, or should have known, that a robbery was likely to occur if Marvin viewed Florencio and Anastacia's jewelry. Without more facts, we refuse to generalize all individuals with histories of drug-related offenses as foreseeably committing other non-drug related crimes which would hold a third party civilly liable for the conduct of those individuals. We agree with the circuit court's determination that, in general, "[c]onvictions for drug possession and/or promotion . . . are materially different and distinguishable from crimes of violence such as assault, terroristic threatening, robbery, [and] murder[.]" See Shimose v. Hawai‘i Health Sys. Corp., 134 Hawai‘i 479, 487, 345 P.3d 145, 153 (2015) (holding that there was no rational relationship between a radiological technician's prior drug conviction and his access to non-controlled substances that would have entitled a medical center from disqualifying him from prospective employment). Based on the circuit court's undisputed FOFs and viewing the evidence in the light most favorable to Appellants, Marvin's conduct was not foreseeable and Irene owed Appellants no duty of care to refrain from exposing Marvin to Florencio and Anastacia's jewelry.

Appellants contend the circuit court also erred when it concluded that "Irene's affirmative conduct did not create the circumstances that afforded the opportunity for [Marvin] and [Higa] to commit the robbery." In essence, Appellants argue that Irene breached her duty of care by inviting Marvin to view Florencio and Anastacia's jewelry and, therefore, should be

liable for the harm that they suffered.

As noted *supra*, Irene did not owe a duty to Appellants to refrain from exposing Marvin to Florencio and Anastacia's jewelry because Marvin's criminal conduct was not foreseeable. See Cho v. State, 115 Hawai'i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) ("It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages."). Furthermore, "[w]hether there was a breach of duty or not, *i.e.*, whether there was a failure on the defendant's part to exercise reasonable care, is a question for the trier of fact." Doe Parents No. 1 v. State, Dep't of Educ., 100 Hawai'i 34, 57-58, 58 P.3d 545, 568-69 (2002) (brackets omitted), as amended (Dec. 2 and 5, 2002). The circuit court's FOF/COL concluded that Irene's affirmative actions did not create an unreasonable risk of harm to Appellants:

> 9. [Irene's] affirmative acts during the meeting with [Florencio and Anastacia], including inviting [Marvin] to handle and try on [Florencio and Anastacia's] jewelry, did not create or expose the [Appellants] to a recognizable, high degree of risk of harm, as contemplated by the Restatement (Second) of Torts, that [Marvin] would commit a violent armed robbery against them.
>
> . . . .
>
> 14. Furthermore, [Irene] did not create an environment that exposed [Florencio and Anastacia] to a recognizable and high degree of risk of harm, as the robbery took place at a commercial parking lot and not at [Irene's] home. [Irene's] affirmative acts of inviting [Marvin] to try on the jewelry at her home, one to two hours prior to the robbery, did not create the circumstances that afforded the opportunity for [Marvin] and [Higa] to commit the robbery, unlike the affirmative acts which triggered the husband's violent reaction in Touchette, or the affirmative acts triggering the subsequent, repeated sexual molestation behavior in Pamela L.

The circuit court also found that "there was a lack of evidence to establish that [Irene] participated, facilitated, or assisted [Marvin] and [Higa] in the planning and/or commission of the crimes against [Florencio and Anastacia]." Viewing the evidence and all inferences in the light most favorable to Appellants, there was no substantial evidence to support Appellants' claim that Irene's affirmative conduct created the circumstances that

afforded Marvin and Higa the opportunity to commit the robbery, and the circuit court properly rejected this claim.

### IV. CONCLUSION

Therefore we affirm the following entered in the Circuit Court of the First Circuit:

(1) "Findings of Fact, Conclusions of Law, and Order Denying Plaintiffs' Motion for Entry of Default Judgment Against Defendant Irene B. Quemado Filed on 5/10/2013, Notice of Entry," entered on December 2, 2013;

(2) "Order Denying Plaintiffs' Motion for Reconsideration of Findings of Fact, Conclusions of Law, and Order Denying Plaintiffs' Motion for Default Judgment Against Defendant Irene B. Quemado; Notice of Entry," entered on January 3, 2014; and

(3) "Final Judgment; Notice of Entry," entered on June 6, 2014.


On the briefs:

Joseph P.H. Ahuna, Jr.
Joseph P.K. Ahuna, III
David K. Ahuna
(Law Offices of Joseph P.H. Ahuna, Jr.)
for Plaintiffs-Appellants.

Johnaaron Murphy Jones
for Defendant-Appellee
Irene B. Quemado.